### GEORGE W. COLLINS *vs.* MAYOR AND ALDERMEN OF HOLYOKE.

Hampden.    October 4, 1887. — March 3, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Certiorari — Pleading — Betterment — Sewer Assessment — Notice — Ordinance.*

If a petition for a writ of certiorari to quash an assessment levied by the mayor and aldermen of a city is reserved by a single justice of this court for the consideration of the full court, upon a petition sworn to by the petitioner, and an answer filed by a succeeding board, the averments of the answer are to be taken as true.

Under the Pub. Sts. c. 50, § 1, as to the laying and making of common sewers, the mayor and aldermen of a city may order a sewer to be "built" by a joint committee of the city council.

Notice need not be given by the mayor and aldermen of a city of their intention to lay out and construct a sewer, and to levy assessments therefor, to a person to be benefited thereby.

It is no objection to a sewer assessment that a mayor and aldermen called in another person to assist them in making it.

The sewer ordinance of Holyoke of 1875, §§ 2, 5, requiring the superintendent of sewers to keep and submit to the mayor and aldermen an account of the cost of constructing a sewer, and to report a list of the persons benefited, is directory merely; and his failure to do so will not avoid a sewer assessment.

Sewer assessments may, as a mode of equitable adjustment, be divided by the mayor and aldermen of a city "into three classes, direct benefit, remote benefit, and more remote benefit."

A notice in writing of a sewer assessment, with a demand of payment, given to a person benefited, by a city treasurer, under an order of the mayor and aldermen directing him to collect it, is sufficient.

The petition also alleged that the order of levy applied only to "abutters," the petitioner not being such; that the city records did not show the expense of the sewer; that no benefit was derived from the same; that the assessment was not made by the board, which had never made any legal assessment; that other persons similarly situated or abutting on the sewer had not been assessed; and that the time when the proportions of assessments should be paid had not been fixed. The answer of the board alleged that the use of the word "abutter" was a clerical error that had been corrected; that the records did disclose such expense; that the question of benefit could not be raised; that the board had made the assessment and that it was legal; that all persons benefited had been assessed; and that such time had been fixed. *Held*, that the writ ought not to issue.

PETITION for a writ of certiorari to quash the proceedings of the mayor and aldermen of the city of Holyoke, in assessing a proportionate part of the cost of a sewer in Lyman Street in that city.

The petition, and an amendment thereto, alleged that the mayor and aldermen, on March 24, 1885, adopted the following order : " *Ordered*, That the committee on sewers and drains be hereby authorized and instructed to construct a trunk sewer as follows, viz. in Canal and Lyman Streets, commencing at the outlet under the second level canal, opposite the Winona Paper Company's Mill, and terminating at the Connecticut River Railroad Company's Dry Bridge (so called), extending across Lyman and Canal "; that the petitioner owned an estate on Ely Street, not abutting on Lyman Street or on the line of the sewer; that the board of aldermen, on December 29, 1885, attempted to levy an assessment for the construction of the sewer by a vote, which, so far as material, was as follows : " Assessments on the abutters for the construction of sewers and sidewalks were levied as follows, and signed by the mayor and aldermen, - viz. trunk sewer in Lyman Street, from Race Street to Canal Street, total $6,630.86 "; that the above order and vote were all the records of the board of aldermen relating to the sewer ; that the sewer had been constructed and a warrant had been issued by the mayor and aldermen to the city treasurer instructing him to collect $51.84 of the petitioner,

that being the amount of his alleged assessment for the construction of the sewer, for which the following demand had been made upon him: "City of Holyoke, City Solicitor's Office, December 27, 1886. Geo. W. Collins: A sewer assessment amounting to $51.84 has been placed in my hands for collection. Please attend to the matter at once, and save further costs. T. B. O'Donnell, Solicitor"; that neither the petitioner nor his estate derived any benefit from the sewer, either by the entry of any particular drain, or by more remote means, and that his estate had ample sewerage previous to the construction of the sewer; that the board of aldermen did not fix the time when the proportion of any alleged assessments charged upon persons benefited by said sewer should be paid; that there was no record of the board of aldermen that the superintendent of sewers ever kept and submitted to the board an account of the cost of constructing the sewer and all other expenses in relation thereto, as was his duty under the ordinances of the city; * that the superintendent of sewers did not report to the board of aldermen a list of the persons and estates deriving benefit from the sewer, and there was no record of any such report; that there was no record that the board of aldermen ever assessed the petitioner $51.84, or any other sum, as his portion of the expense of the sewer; that a person not the superintendent of sewers, and not a member of the city council, made a list of persons who ought to be assessed, and of the amounts to be assessed, in which was the petitioner's name, and opposite it $51.84; that this list and the amounts therein were the only basis for the warrant, demand, and a notice of sale of the estate; that the sewer was built under the supervision and direction of a joint committee, composed of four members of the common council and three aldermen; that other persons

---

* The sewer ordinance of Holyoke of 1875 contains these provisions:

"Section 2. The superintendent of sewers shall keep and submit to the mayor and aldermen an accurate account of the cost of constructing each main drain or common sewer, and of all other expenses in relation thereto, and he shall, annually, in December, submit a report of all work performed and the amount of all expenditures for sewers and drains."

"Section 5. The superintendent of sewers shall keep an accurate account of the expense of constructing and repairing each main drain or common sewer, and shall report the same to the board of aldermen, together with a list of the persons and estates deriving benefit therefrom."

owning land similarly situated with respect to the sewer, and deriving as much benefit therefrom, were not assessed, or in any manner required to pay for any portion of the expense of the construction of the sewer; and that persons owning land abutting on Lyman Street and the line of the sewer were not assessed or required in any manner to pay for any portion of the expense of the construction of the sewer.

The petition, as amended, averred that the assessment was illegal and void, for the following reasons:

" 1. Because he is not an abutter upon said Lyman Street, or the line of said sewer. 2. Because the records of said city do not show what was the actual expense of constructing said sewer, in any legal or proper form. 3. Because the superintendent of sewers did not keep and submit to the board of aldermen an account of the cost of constructing said sewer, and all expenses in relation thereto. 4. Because the superintendent of sewers made no report to said board of the cost of constructing said sewer. 5. Because said superintendent of sewers did not report to said board a list of the persons and estates deriving benefit from said sewer. 6. Because the alleged assessment upon your petitioner was not made by the board of aldermen, and because said board never made any legal assessment for cost of constructing said sewer. 7. Because said sewer was not constructed by the mayor and aldermen, as required by law, and because no legal demand for payment of any assessment was ever made on your petitioner, and because no notice of any assessment or charge was ever given him. 8. Because various persons owning land situated on and abutting on line of said sewer, and various other persons owning land situated with respect to said sewer similarly to your petitioner's land, and deriving as much benefit therefrom, have not been assessed or required to pay for any portion of the cost of said sewer. 9. Because said alleged assessment, and the attempts to enforce the same, are invalid and illegal on account of divers other omissions, irregularities, and errors. 10. Because said petitioner or his estate does not derive any benefit from said sewer, either by entry or by more remote means, and because his said estate had ample sewerage previous to the construction of the sewer in question. 11. Because the board of aldermen did not fix the

time when the proportion of any alleged assessments charged upon the persons benefited by said sewer should be paid."

The following affidavit was annexed to the petition: " Commonwealth of Massachusetts, Hampden, ss. May 14th, 1887. Subscribed and sworn to before me. William H. Brooks, Justice of the Peace."

The answer, and amendments thereto, admitted that the mayor and aldermen ordered the sewer to be built, and that they made and laid the same; that the petitioner was the owner of the lot of land as alleged; that the petitioner was not an abutter on Lyman Street, or on the line of the sewer, in the sense that the land of the petitioner did not adjoin Lyman Street, and was not directly on the line of the sewer, " but the said assessment is not affected thereby "; that no notice was given to the petitioner of the intention to construct the sewer, as the mayor and aldermen were under no obligation to give such notice, and their " failure to give it in no way affects the validity of the assessment"; that the assessment was made to "abutters," but the use of that word was an error made by the clerk, who had amended his records in that respect, and " the use of the word 'abutters' did not affect the validity of the assessment"; that the order for the construction of the sewer, as set forth in the petition, was correct; that there was no record of the board of aldermen that the superintendent of sewers kept an account of the cost of constructing the sewer, and that the superintendent did not report to the board a list of persons and estates deriving benefit from the sewer, but " the failure of the superintendent to make such report, and the fact that there is no such record of the board of aldermen, do not affect the validity of the assessment"; and that the mayor and aldermen employed the chairman of the board of assessors, on account of his large experience, to aid and assist them in making the assessments, by furnishing them with a list of the names of the persons who he thought ought to be assessed, and the amount for which he thought they ought to be assessed. " They deny that said list and amounts so made were the only basis of said warrant, demand, and notice; and they say that the superintendent of sewers furnished them with the cost of said sewers, by which they were enabled to make said assessments."

The answer, as amended, denied that the vote of the board of aldermen of December 29, 1885, levying the assessments for the construction of the sewer, was as set forth in the petition, but was as follows: " Assessments on the abutters for the construction of sidewalks, also assessments to defray in part the expense of constructing certain sewers, were levied as follows, and signed by the mayor and aldermen, viz. trunk sewer in Lyman Street, from Race Street to Canal Street, total $6,630.86 "; that other persons whose land was similarly situated and derived as much benefit therefrom as that of the petitioner were not assessed ; and that persons owning land on Lyman Street, and on the line of the sewer, were not assessed or required to pay for any portion of the expense of the construction of the sewer, but alleged that " all such persons were assessed."

The answer neither admitted nor denied, as a matter not within the knowledge of the respondents, the allegation in the petition that the sewer was built under the supervision and direction of a joint committee, composed of four members of the common council and three aldermen, and declared that, " if the said allegation be true, the validity of the assessment is not affected thereby." .

The answer, as amended, alleged that, on December 29, 1885, an order or warrant for the collection of two thirds of the cost of the sewer, as provided by the ordinances of the city, was signed by the mayor and aldermen of that year ; that in a list annexed to the same an apportionment of the cost of the sewer was made by the mayor and aldermen to the parties benefited thereby ; that the warrant and list were given by the mayor and aldermen to the city treasurer for the collection of such sums ; that the assessment of $51.84 upon the petitioner was made in the list annexed to the warrant ; that the treasurer duly demanded that sum from the petitioner, who neglected and refused to pay the same ; and that in the list the assessments were divided into three classes, which were called direct benefit, remote benefit, and more remote benefit, and that the petitioner was assessed in the third class.

The answer, as amended, then averred, in reply to the particular reasons for quashing the assessment: 1. that it was admitted that the petitioner was not an abutter in the sense

of being an adjoining owner, but that the validity of the assessment was not thereby affected; 2. that the records of the city showed what was the actual expense of the construction of the sewer, in the order of the board of aldermen of December 29, 1885, and in the warrant of the mayor and aldermen of the same date; 3 and 4. that the superintendent of sewers did keep and submit to the board of aldermen an account of the cost of the construction of the sewer, and did make a report thereof, both of which were informal, and copies thereof could not be annexed, but if the superintendent made no such report, the said assessment would not be rendered invalid thereby; 5. that it was admitted that the superintendent of sewers did not report to the board a list of the persons and estates deriving benefit from the sewer, but the "validity of the assessment is not affected thereby"; 6. that the assessment was made by the board of aldermen, and was legal, as appeared by the above order and warrant of December 29, 1885; 7. that the sewer was constructed by the mayor and aldermen, as required by law, that a demand for the payment of the assessment was duly made upon the petitioner, and that he had sufficient notice that the assessment had been made, notice and demand being sent by mail, properly directed to the petitioner, by the city treasurer, and signed by him, about February 1, 1886, in substance as follows: "City of Holyoke, Treasurer's Office, 1886. George W. Collins. Sir: A tax has been assessed on you by the city of Holyoke, to defray the expense in part of constructing a main drain or common sewer in Lyman Street, from Race Street to Canal Street, of $51.84. You are hereby requested to make immediate payment of the same"; 8. that it was denied that various persons owning land situated and abutting on the line of the sewer, or situated with respect to the sewer similarly to the land of the petitioner, and deriving as much benefit therefrom, had not been assessed or not required to pay for any portion of the cost of the construction of the sewer; 9. that it was denied that the assessment was invalid because of divers other errors, but that the same should have been specifically set forth, if they existed, to require an answer; 10. that the petitioner could not object in this proceeding that he or his estate received no benefit from the sewer, but that if he could so object, his estate did receive such benefit; and 11. that the board of

aldermen did fix the time when the proportions of the assessments should be paid.

The answer was signed by "James J. O'Connor, William H. Jess, John Dillon, James F. Cleary, W. E. Syms, John Hildreth, Henry Winkler, James W. Toole, Mayor and Aldermen City of Holyoke, Mass.," and the following affidavit was annexed to it: "Commonwealth of Massachusetts. Hampden, ss. August 24, 1887. Personally appeared before me the above-named James J. O'Connor, William H. Jess, John Dillon, James F. Cleary, W. E. Syms, John Hildreth, Henry Winkler, and James W. Toole, who do depose, make oath, and say, that they are the respondents named in the foregoing answers and the amendments thereto subscribed by them, and they know the contents thereof; that those allegations in said answers and amendments which relate to the matters of the records of the board of mayor and aldermen, and to said warrant or order, they know of their own knowledge to be true ; that any of them were not members of the board of mayor and aldermen of the year 1885, who made the assessment in question, and they do not know of their own knowledge that the other matters and things stated in said answers and amendments are true, but upon information and belief they believe them to be true. Before me, T. B. O'Donnell, Justice of the Peace."

Hearing before *W. Allen*, J., who reserved the case for the consideration of the full court, upon the petition and answer.

*W. H. Brooks*, for the petitioner.

*T. B. O'Donnell*, for the respondents.

KNOWLTON, J. In proceedings to obtain a writ of certiorari the burden is upon the petitioner to establish all the material allegations of his petition. In this case, which was reserved upon the petition and answer, we must hold, in accordance with the decision in *Dickinson* v. *Worcester*, 138 Mass. 555, that the statements in the defendant's official answer are to be taken as true, not only in those parts which set out the record, and the acts of the board within its jurisdiction which do not appear in the record, but also in those which allege extraneous facts which might have been traversed, and perhaps controlled by evidence. The affidavit appended to the petition could not have been received as evidence at a final hearing upon the facts, and cannot affect the rights of the parties upon this reservation.

The membership of the defendant board is not the same as when the assessment in question was made. But while its members change from time to time, the board itself as a tribunal is continuously the same. In *Fairbanks* v. *Fitchburg*, 132 Mass. 42, the board of mayor and aldermen that made the answer had not the same members as when it passed the order which was alleged to be illegal, but it was held that its right to answer was not thereby affected. In that case it appeared that the members who answered had executed the order which was called in question, and it was assumed that in the performance of that duty they must have known the facts connected with the adoption of the order. But the right of such a tribunal to answer as to its previous doings does not depend upon former action of the members who make the answer in the matter to which the answer relates. It will often happen that the doings of a board acting judicially will be first called in question after they have been completed, and after the membership of the board has entirely changed. In such a case, it is important that the proceedings should be officially set forth. And this can be done only by those who are members when the question arises. Their answer as a board is made over their own signatures, and under the sanction of their official oaths. As public officers they may be expected to act impartially. It may be presumed that, before making such an answer, they will acquire what may be called official knowledge of the acts of their predecessors. As members of the same board, they may in a variety of ways be expected to have opportunities of knowing what the board has done, and how it has done it. Without personal knowledge, they may have official knowledge, which is something better than mere hearsay. And in presenting an answer upon which the conduct of the board is to be passed upon by a higher tribunal, they should be permitted to state facts which they know officially, even though they do not know them personally. The statements in relation to the records of the board, and its doings within its jurisdiction, which appear in the answer in this case, seem to be of this kind. The others are mere allegations in the nature of pleading, which may always be controverted by a petitioner. The form of jurat annexed to the answer does not indicate that those who answered had not official knowledge of the

acts of the board in regard to which such an answer is ordinarily conclusive. It merely disclaims personal knowledge. But it is unnecessary to decide in this case whether any part of the answer except the record would have been conclusive if traversed by the petitioner, for, in accordance with the decision to which we have referred, all its allegations must be deemed to be true.

Although the proceedings which we are considering were very irregular, the legal questions which arise in the case as presented are comparatively simple. It is true, as contended by the petitioner, that the mayor and aldermen could not delegate the authority given them by the Pub. Sts. c. 50, § 1, to lay and make common sewers. But no suggestion is made that this sewer was not legally laid, and it is only objected that it was " built under the supervision and direction of a committee, composed of four members of the common council and three aldermen." But this was done by order of the mayor and aldermen. The statute which gave them authority to make the sewer did not preclude them from employing agents to supervise and direct the work. If there was any irregularity in their conduct in this respect, we cannot say that the sewer was not " made " by the defendants, or that it was illegally constructed.

The petitioner was not entitled to notice of the defendant's intention to lay out and construct the sewer, or to make an assessment upon him. *Allen* v. *Charlestown*, 111 Mass. 123. *Holt* v. *Somerville*, 127 Mass. 408.

The validity of the assessment made by the mayor and aldermen is not affected by the fact that they called in another person to assist them in making it. *Taber* v. *New Bedford*, 135 Mass. 162.

The provisions of the ordinances requiring the superintendent of sewers to keep and submit to the board an account of the cost of constructing the sewer, and to report a list of the persons deriving benefit from it, were merely directory, and his failure to comply with them did not invalidate the assessment. *Dickinson* v. *Worcester*, 138 Mass. 555.

As a convenient method of equitably adjusting the assessments, the members of the board might, if they saw fit, divide them "into three classes, direct benefit, remote benefit, and more remote benefit."

After the assessments were made, the petitioner appears to have had notice of the assessment upon him, in accordance with the provision of the Pub. Sts. c. 50, § 4.

The allegations of the answer and the amendments to it cover all the other matters referred to in the petition, and we find that justice does not require that a writ of certiorari should issue.

*Petition dismissed.*