FRANK DICKINSON & others *vs.* NEW HAVEN AND NORTH-
AMPTON COMPANY.

Franklin.   September 15, 1891. — November 25, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Railroad — Crossing of Highway — Drainage — County Commissioners.*

If a railroad company constructs its railroad across an existing highway, and the
provision made at the outset by order of the county commissioners for draining
the way after a time becomes ineffective, the county commissioners have the
power, under the Pub. Sts. c. 112, §§ 135, 136, to make a new order for the ef-
fectual drainage of the way at the expense of the company, and by proceedings
in equity in this court to have the same enforced.

BILL IN EQUITY, under the Pub. Sts. c. 112, § 136, filed in
this court by the selectmen of the town of Whately, to compel
the defendant corporation to drain a highway at a crossing of
the same above grade by its railroad, in accordance with an
order of the county commissioners.   The case was heard by
*Knowlton*, J., who reported it for the consideration of the full
court, and was as follows.

The defendant's railroad ran from north to south, and the
highway from east to west, at the point in question.   On July
14, 1880, the defendant applied to the county commissioners,
alleging that it was necessary in building its railroad for it to
cross the highway near the house of one Mrs. Graves, and re-
questing the commissioners to prescribe " what alterations may
be made in said way, and in the brook passing through the
lands of said Mrs. Graves ; also the time and manner of mak-
ing the alterations, and any necessary structures which may be
required at the said crossing."   The commissioners, on July 23
following, ordered that the highway should be altered so as to
pass under the railroad, prescribing the depth of the necessary
excavation for that purpose, and that it should be drained by a
ditch through the Graves land, commencing at a point in the
westerly line of the defendant's land about three hundred and
thirty-one feet south of the highway, and thence running in a
westerly direction and parallel with the highway for one hun-

dred rods to the brook above mentioned, which formed the only convenient mode of draining the way at the crossing. This drain was dug, and the damage caused by its construction was paid by the defendant company. The defendant in constructing its road dug a drain from the highway at the crossing in a strip of land owned by it alongside its location to the point where the drain ordered by the commissioners began, and there connected the two drains, using the earth excavated from both for building an embankment, by means of which and a bridge the railroad was carried over the highway. This embankment was eight or ten feet higher than the general level of the surrounding country, and the excavation for the highway at the crossing about five and a half feet lower. On December 14, 1881, the commissioners found that the defendant had complied with their order of July 23, and passed another order accepting the alterations and the crossing. At the date of this acceptance of the alterations and crossing by the commissioners, the crossing was effectually drained by both of the ditches, and so continued for the space of four years, until both of them became filled up. with grass, weeds, willows, and other materials, and the highway so obstructed that the accumulated water and ice at the crossing at times rendered the way inconvenient and unsafe for public travel. On February 11, 1890, the selectmen of Whately applied to the commissioners, alleging in substance that the highway was obstructed as above set forth, and prayed the commissioners to order the defendant company to make suitable provision for the drainage of the highway at the crossing, and forever to maintain the same and keep it in repair. On this application the commissioners, on May 7, 1890, met and viewed the premises, and ordered that the defendant company, "As soon as may be and within three months next hereafter, make suitable and adequate provision for the drainage off of all the water flowing into said highway at said crossing, and cause the water so flowing into said highway thereat to be drained off from and out of said highway, and to be removed therefrom as the same flows into or collects therein, and that said drainage be so constructed as to take the water from said highway under said bridge and at a point at least twelve feet in the clear under the railroad bridge over said highway, so as to leave a clear and unobstructed roadway

of not less than twelve feet in the clear under said bridge, and to forever maintain said drain and keep the same in repair, all to be done and completed to the acceptance of the commissioners."

The defendant company had not complied with the order of the county commissioners of May 7, 1890, and contended that the county commissioners had not jurisdiction to make the award or the decree sought to be enforced by this bill.

The case was argued at the bar in September, 1891, and afterwards was submitted on the briefs to all the judges.

*C. C. Conant*, for the plaintiffs.

*J. C. Hammond*, for the defendant.

ALLEN, J.   At the outset, when the defendant company found it necessary in the construction of its railroad to cross the highway in question, it made application to the county commissioners for a decree prescribing what alterations should be made; and the county commissioners passed a decree prescribing the alterations, and made a provision for the drainage of the highway, by ordering a drain to be built which began at a point three hundred and thirty-one feet away from the highway. The reason for this apparently was because the company, in constructing its railroad, had made an excavation alongside thereof from the highway at the place of the proposed crossing, over its own land, to the point where the drain ordered by the county commissioners was to begin. The drain could not well be laid along the highway itself, but the contemplated method of draining the highway was to use the existing excavation by the side of the railroad as a drain for the distance of three hundred and thirty-one feet, and then to excavate a drain connecting therewith across the land of Mrs. Graves to a brook. At the time of the original order, this was sufficient to provide effectual drainage, and the decree of the county commissioners was complied with, and the drain was built, and the damages for crossing the land of Mrs. Graves were paid by the defendant company, and the highway was in fact effectually drained for four years thereafter; and then the excavation and drain became obstructed with grass, weeds, willows, and other materials.

The question is whether, under this state of things, the county

commissioners had authority to pass a new order providing for effectual drainage at the expense of the company.

It is conceded that the county commissioners at the outset had authority to provide for drainage at the expense of the company, but it is contended that this authority was exhausted by the decree which they passed in 1880.

The authority to pass the original decree was not conferred by any language which in express terms empowered them to require drainage to be provided by the company, but is derived incidentally from other provisions of statute which imply its existence. Thus in Pub. Sts. c. 112, § 119, it is enacted that, " when a railroad is laid out across a highway or other way, it shall be constructed so as not to obstruct the same "; and a similar requirement is found in earlier statutes. Gen. Sts. c. 63, § 46. Rev. Sts. c. 39, § 66. Then in Pub. Sts. c. 112, § 121, it is enacted that " a railroad corporation may raise or lower a highway or other way for the purpose of having its road pass over or under the same; but before proceeding to cross or to alter or excavate for the purpose of crossing the way, it shall obtain from the county commissioners a decree prescribing what alterations may be made in the way, and the manner and time of making the alterations or structures which the commissioners may require at the crossing." This in like manner comes from earlier statutes. Gen. Sts. c. 63, § 48. Rev. Sts. c. 39, §§ 67, 68. No express provision is found that the county commissioners may require drainage, but it is properly assumed that such power was given by implication. The primary and fundamental provision is, that when a railroad is to cross a highway it must be so constructed as not to obstruct the same. The highway is recognized as an existing thing, and if a railroad company finds it necessary to cross it, the railroad must be so built that the highway will not be obstructed thereby. The obvious meaning of this is, that the railroad must be so built that no obstruction of the highway will result from the building of the railroad; and if drainage is necessary to prevent the highway from being obstructed by water, the county commissioners have power to require such drainage. Any other construction would be narrow and insufficient to carry out the plain purpose of the Legislature. And indeed to this extent we do not understand the

learned counsel for the defendant to deny the authority of the county commissioners.

But it seems to us that, if thus much is to be assumed, the rest follows. By the Pub. Sts. c. 112, § 135, " Original jurisdiction of all questions touching obstructions to highways or town ways, caused by the construction or operation of railroads, shall be vested in the county commissioners within their respective jurisdictions " ; and by § 136, this court is authorized by proceedings in equity to " compel railroad corporations . . . to comply with the orders and decrees of county commissioners in all cases touching obstructions to such ways by railroads." These statutes also are not new, but originated in St. 1849, c. 222, §§ 4, 5, re-enacted in Gen. Sts. c. 63, §§ 62, 63. It seems to have been contemplated that the original orders or decrees of the county commissioners might prove insufficient, or that circumstances or questions might arise which were not and perhaps could not be adequately considered or provided for in the first instance. Railroad companies which lay out their railroads across existing highways are made subject to the jurisdiction of the county commissioners in respect to their duty of not obstructing the highways, not only at the outset, but continuously. The general policy of the legislation is to authorize the county commissioners to put upon the railroad companies the burden of keeping the highways free from obstructions which result from building railroads across existing highways. To this end, the county commissioners may at the outset pass such decrees as seem suitable for the purpose; and if necessary to pass further decrees at a later date, jurisdiction is conferred upon them to enable them to do it. There is no reason why the Legislature may not properly subject railroad companies to this duty, and such appears to have been the purpose of §§ 135 and 136. See *Commonwealth* v. *New Bedford Bridge*, 2 Gray, 339 ; *Cooke* v. *Boston & Lowell Railroad*, 133 Mass. 185 ; *Wellcome* v. *Leeds*, 51 Maine, 313.

No objection is made to the form of the order of the county commissioners. For these reasons, in the opinion of a majority of the court, the entry must be,

*Decree for the plaintiffs.*