BOSTON AND MAINE RAILROAD *vs.* COUNTY COMMISSIONERS OF
MIDDLESEX.

Middlesex. March 11, 14, 1921. — June 2, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Certiorari. County Commissioners. Railroad. Way,* Public. *Bridge. Words,*
"*Obstruct.*"

An allegation in an answer of a board of county commissioners to a petition for a
writ of certiorari directing them to certify to the court " all their orders and
proceedings " relating to a petition by the board of selectmen of a town under
St. 1906, c. 463, Part II, § 115, that a bridge maintained by a railroad corpora-
tion over a highway be repaired, that " it appeared to the board . . . and the
board found, that the railroad . . . so crossed . . . [the] public highway . . . as
to obstruct it, contrary to the provisions of " St. 1906, c. 463, Part II, § 115, is
not demurrable on the ground that, in its concluding words, it states a conclu-
sion of law reached by the board in passing upon the petition before them, the
statement objected to being one of issuable fact as well as one of law.

A board of three county commissioners, in answer to a petition for a writ of certi-
orari directing them to certify to the court " all their orders and proceedings "
relating to a petition which had been presented to, and acted upon by, a pre-
ceding board, only one of whose members was a respondent, beside setting out
the bare record of the preceding board may allege pertinent facts as to the acts
of their predecessors, which, while not known to two of the respondents as indi-
viduals, had come to their knowledge in their official capacity and which they
believed to be true.

*It seems,* that a motion to strike from an answer to a petition for a writ of certiorari
matter alleged to have been included therein improperly is an irregular and
anomalous way of raising for decision a pure question of law which under the
common law and our practice can be determined only by demurrer or by an
objection to the admission of evidence when offered in proof of the alleged facts.

A bridge twenty feet wide, which was built by a railroad corporation in 1845 to
carry over its tracks a public way fifty-eight feet wide, upon which in 1895 a
street railway was built and over which since 1845 and especially since 1895,
travel has increased to such a degree that, irrespective of the street car tracks, it
is and long has been entirely inadequate to meet the requirements of the greatly
increased travel of teams, automobiles and other vehicles using it, is an ob-
struction to travel over the way.

The obligation of a railroad corporation not to obstruct the use of a public way at
a crossing is a continuous one, not measured by its duty when the way was
located, but one, that enlarges to meet the statutory requirements that public
ways shall be kept reasonably safe and convenient for travellers at all seasons of
the year.

The county commissioners of the county in which the way and bridge above de-

scribed are located have jurisdiction under G. L. c. 160, § 106, to compel the railroad corporation to remove the obstruction by an order to change the form of the obstruction in any degree which shall be necessary to overcome its objectionable features or conditions, even if such change involves the construction of a new bridge; and the work done in pursuance of such order is a repair, and is not an alteration, of that which originally was insufficiently or imperfectly done.

The word "obstruct," as used in Rev. Sts. c. 39, § 66, and in G. L. c. 160, § 106, and the intervening statutes, does not mean "to wholly block up."

The fact that the abutments to the bridge had stood within the location of the way above described more than forty years did not justify their continuance by the railroad corporation under R. L. c. 53, § 1.

PETITION, filed in the Supreme Judicial Court on May 10, 1916, for a writ of certiorari directing the county commissioners of the county of Middlesex to certify the records of that board relating to a petition by the selectmen of the town of Reading, filed on April 13, 1915, under St. 1906, c. 463, Part II, § 115, for the repair of a bridge maintained by this petitioner over Lowell Street in Reading and "all their orders and proceedings in the premises, with such an extension of their records as will state the material facts upon which they proceeded and their rulings thereon, to the end that the same may be dealt with as law and justice may require."

In the answer to the petition, the board stated that they "do hereby return a true copy of the record of the respondent board in relation to the matters referred to in said petition, said record being attached hereto and made part of this answer . . . and further aver that the record does not state in detail all the facts proved and rulings made, necessary for the determination of this case, and therefore certify as follows:" There then followed a recital of facts. Material facts therein stated are described in the opinion.

The answer was signed by the three members of the board, respondents, and after the signatures and signed by two of the three, was the following:

"We, the undersigned, were not members of the board of county commissioners of Middlesex county at the time of the hearing before said board on the above matter, and were not present at the hearing. Those statements in the above certificate which relate to matters of record of the board of county commissioners, we know of our own knowledge to be true. As to our other statements, before signing the above certificate, we acquired official

knowledge of the acts of our predecessors, and we believe our statements to be true."

The recital in the fourth paragraph of the answer was: "It appeared to the board of county commissioners at said hearing, and the board found, that the railroad owned or operated by the Boston and Maine Railroad, so crossed Lowell Street, a public highway in the town of Reading, as to obstruct it, contrary to the provisions of" St. 1906, c. 463, Part II, § 115.

Certain motions of the petitioner to strike out portions of the answer and the special demurrer of the petitioner and a stipulation of the parties are described in the opinion.

The petition came on to be heard before *Carroll*, J., who at the request of the parties reserved it for determination by the full court, as stated in the opinion.

Material statutes are as follows:

Rev. Sts. c. 39, § 66: "If any railroad shall be so laid out as to cross any turnpike road or other way, it shall be so made as not to obstruct such turnpike road or way."

Rev. Sts. c. 39, § 72: "Every railroad corporation shall maintain and keep in repair all bridges with their abutments, which such corporation shall construct over or under any turnpike road, canal, highway, or other way."

R. L. c. 53, § 1 (see now G. L. c. 86, § 2): "If buildings or fences have been erected and continued for more than twenty years, fronting upon or against a highway, town way, private way, training-field, burying-place, landing-place, street, lane or alley, or other land appropriated for the general use or convenience of the inhabitants of the Commonwealth, or of a county, city, town or parish, and from the length of time or otherwise the boundaries thereof are not known and cannot be made certain by the records or by monuments, such buildings or fences shall be taken to be the true boundaries thereof. If boundaries of such ways or places can be made certain any building or fence thereon may upon the presentment of a grand jury be removed as a nuisance unless it has continued at least forty years."

St. 1906, c. 463, Part II, § 115 (now G. L. c. 160, § 106): "If, upon application to the county commissioners by the board of aldermen of a city or selectmen of a town, and after notice to the corporation which owns or operates a railroad, and a hearing, it

appears that the railroad so crosses a public way as to obstruct it, contrary to the provisions of section one hundred and seven, or of a decree made under the provisions of section one hundred and nine, or that the corporation refuses or neglects to keep a bridge or other structure which is required or necessary at such crossing in proper repair, the county commissioners may make a decree prescribing what repairs shall be made by the corporation at the crossing, and the time within which they shall be made, and shall make a decree ordering the corporation to pay the costs of the application. They may further order the corporation to give security, as provided in section one hundred and nine, for the faithful performance of the requirements of the decree and for the indemnity of said city or town upon a failure in such performance."

St. 1906, c. 463, Part I, § 23, as amended by St. 1908, c. 542, § 1 (see now G. L. c. 159, § 59): " If a public way and a railroad cross each other, and the board of aldermen of the city or the selectmen of the town in which the crossing is situated, or the directors of the railroad corporation, or the directors of a street railway company having tracks on the said way are of opinion that it is necessary for the security or convenience of the public that an alteration which does not involve the abolition of a crossing at grade should be made in the crossing, the approaches thereto, the location of the railroad or way, or in a bridge at the crossing, they shall apply to the county commissioners, or, if the crossing is situated in the city of Boston, to the board of railroad commissioners, who shall, after public notice, hear all parties interested, and, if they decide that such alteration is necessary, shall prescribe the manner and limits within which it shall be made, and shall forthwith certify their decision to the parties and to said board. This proceeding may include any case where there is need of the rebuilding of a highway bridge or any structural change or renewal for the purpose of strengthening or improving it. In case any street railway company is authorized to lay and use tracks upon the said way, the said company shall bear such part of the expense of building, rebuilding, changing, renewing, repairing or improving a bridge forming a part of said way, or of altering or improving the approaches thereto, as shall be deemed to be just by the commission provided for in sections twenty-five and twenty-six."

*D. E. Hall,* (*H. U. Smith* with him,) for the petitioner.

*L. A. Mayberry,* (*W. F. Levis* with him,) for the respondents.

PIERCE, J. This is a petition for a writ of certiorari against the county commissioners of the county of Middlesex. At the request of the parties a single justice of this court reserved the case for the determination of the full court upon the petition, answer, petitioner's special demurrer and petitioner's motion to strike out parts of the respondent's answer together with the stipulation filed by the parties. We shall consider the questions raised by the petitioner in the order adopted in its brief.

The petitioner contends that "Because the respondent has set forth that certain acts of the petitioner were contrary to the provisions of " St. 1906, c. 463, Part II, § 115, its special demurrer to the fourth paragraph of the respondent's answer must be sustained, on the ground that the alleged objectionable statement is a conclusion of law and not a recital of a finding of material fact. It is of course elementary that common law pleadings must state issuable facts and not conclusions of law. The answer is not obnoxious to this criticism. Upon the petition of the selectmen of the town of Reading of April 13, 1915, to the county commissioners alleging "that said railroad crosses the highway so as to obstruct it, contrary to the law made and provided," and asking a decree prescribing what repairs shall be made by the railroad at the crossing, the county commissioners were required to determine the fact of the obstruction and whether such an obstruction as was found by the commissioners to exist in fact was an obstruction which in law and fact was an incident to the construction, maintenance and operation of the railroad and was an obstruction within the meaning of Rev. Sts. c. 39, §§ 66, 72, and St. 1906, c. 463, Part II, § 115. The statement was one of issuable fact as well as one of law to which a demurrer does not lie.

The petitioner further moved to strike out from the answer the same statement of mixed law and fact to which it had demurred. It also moved to strike out from the answer the statement that " No building or fences have been erected and continued for at least forty years within the limits of said highway." It also moved to strike out of the tenth paragraph of the answer the following phrases and sentences: "irrespective of the existence of the car tracks on said bridge;" "when there is no electric car on it and

the other vehicles passing over it can use the entire roadway,
including that part upon which the car tracks exist;." and also
"and not the tracks of the street railway." It also moved to
strike out of the twelfth paragraph the first two sentences which
are as follows: "That the railroad as originally laid out crosses
Lowell Street so as to obstruct the highway and it has continued
and does now obstruct said highway. The railroad company did
not and has not built or kept up and maintained in good repair
such a bridge with suitable and convenient approaches thereto as
was or is required to accommodate the travel upon the highway."
It further moved to strike out all of paragraph thirteen of the
answer. As reasons for granting its motions the petitioner in
each motion alleges that the statements objected to are "contrary
to the record and to the fact and findings of the commissioners
and are not supported by testimony introduced before the
commissioners."

The first motion is denied for the reason stated for overruling
the special demurrer. The petitioner's argument for the allow-
ance of the remaining motion to strike out rests upon the con-
tention that a succeeding board of the county commissioners with
a personnel different from that of the board which heard the evi-
dence cannot, in answer to a petition for a writ of certiorari, law-
fully set up facts which are conclusive within the jurisdiction of
the county commissioners' court outside of and beyond the facts
certified in the record of the board that heard the testimony unless
a statement of additional facts is necessary to correct and amplify
the record in order that the questions of law may be fairly raised
and determined.

In the case at bar the petitioner asserts that the statements
which it moves be stricken from the answer are outside the record
and are not necessary to correct and amplify the record in order
that the questions of law may be determined. In evidence it calls
attention to the certificate of the board attached to its answer
which reads: "We, the undersigned, were not members of the
Board of County Commissioners of Middlesex County at the time
of the hearing before said Board on the above matter, and were
not present at the hearing. Those statements in the above cer-
tificate which relate to matters of record of the Board of County
Commissioners, we know of our own knowledge to be true. As

to our other statements, before signing the above certificate, we acquired official knowledge of the acts of our predecessors, and we believe our statements to be true." We are of opinion the cases of *Fairbanks* v. *Mayor & Aldermen of Fitchburg*, 132 Mass. 42, and *Collins* v. *Mayor & Aldermen of Holyoke*, 146 Mass. 298, are decisive against the argument of the petitioner. In *Fairbanks* v. *Mayor & Aldermen of Fitchburg*, in answer to a motion by the petitioner therein that "everything should be struck from the answer except that which related to the record, as 'being irrelevant, immaterial, and inadmissible, and not responsive to the prayer of the petition, and not being matters within the jurisdiction of the respondents, and therefore not properly embraced in their answer.' This for the reason that the matter set forth was only within the jurisdiction of their predecessors," the court said " If the order of its predecessor is proceeded with, the board reaffirms and makes such order its own, and thus adopts the findings and rulings which appear to have been made and which in its view justifies such an order. It may therefore return them under the official oath of its members as a part of its official return. It is not limited, as the petitioners contend, merely to bringing in the official record which has come to it from its predecessor, to the end that, while proper upon its face, such order may be quashed on the allegations they have seen fit to make. If those allegations relate in matter of fact or law to that which must have been dealt with in passing the order, the existing board must be held to have also examined and dealt with them before or while executing it. The official oath of the members composing the existing board should therefore be allowed to meet such allegations directly, or by the statement of such other facts as avoid their effect, if such must have been passed upon in passing the order." The case of *Collins* v. *Mayor & Aldermen of Holyoke; supra,* is even more emphatic in the declaration that " as members of the same board, they may in a variety of ways be expected to have opportunities of knowing what the board has done, and how it has done it. Without personal knowledge, they may have official knowledge, which is something better than mere hearsay." For the reasons stated the motion that portions of the answer should be stricken out must be denied. See, in this connection, *Marsch* v. *Southern New England Railroad,* 230 Mass. 483, which held at page 491 that

such motions are "an irregular and anomalous way of raising for decision a pure question of substantive law, which under the common law and our practice act can be determined only on demurrer or by an objection to the admission of evidence when offered in proof of the alleged facts."

The petitioner is the successor in title and as such has the rights and is subject to the obligations of the Boston and Maine Railroad Extension Company to the same degree that that company would have rights and be subject to obligations had it continued to exist as a railroad corporation to this day. The Boston and Maine Railroad Extension Company was incorporated under that title by St. 1844, c. 172, with authority to construct and operate a railroad between Wilmington and Boston through the town of Reading "with all the powers and privileges, and subject to all the duties, restrictions, and liabilities, set forth in the forty-fourth chapter of the Revised Statutes, and in that part of the thirty-ninth chapter of the said statutes, and statutes subsequently passed, which relates to railroads."

The "Extension Company" under its charter rights was constructed in 1845 with such a grade that Lowell Street in the town of Reading had to be raised to pass over it. In 1806 the Court of Session laid out Lowell Street three rods wide. In 1875 the then board of county commissioners upon petition and after hearing re-established the boundaries of the way in a manner that did not "appreciably alter the lines of said way as they then existed," and "preserved the original three rods of width of said way where it crossed the railroad." In 1845 the railroad corporation as a part of the construction of its railroad built a bridge at Lowell Street over its tracks and within the location of the way. The bridge built upon stone abutments "was constructed with a width of only about twenty (20) feet, thereby narrowing the way at this point to considerably less than one-half of its legal width." "In the year 1907 or 1908 the old bridge, erected in 1845, was burned down, and was replaced by a steel bridge with a wooden floor which is now standing. This steel bridge was placed upon the same abutments as the old bridge occupied, and is in substantially the same position. Its width is about twenty-one feet on the bridge roadway." The old bridge and the steel bridge " as originally constructed and as it now exists, is located with its centre line at

about the centre of the legal location of the highway as originally laid out."

In 1895 the town of Reading granted to the Reading and Lowell Street Railway a location upon the highway upon said bridge, tracks were laid across the bridge by the street railway company and cars were then and ever since have been operated thereon. When "one of its cars is on the bridge, there remains but eleven feet six inches of width for the use of teams, and this width is reduced to eight feet whenever the car of said street railway is swinging around the curve approaching the bridge." "The travel on said Lowell Street and over said bridge has increased to such a degree since 1845, and more especially since 1895, that irrespective of the existence of the car tracks on said bridge, it is and long has been entirely inadequate to meet the requirements of the greatly increased travel of teams, automobiles, and other vehicles using the same. In fact, said bridge is entirely inadequate to meet the requirements of the travel over it at the present time, when there is no electric car on it and the other vehicles passing over it can use the entire roadway, including that part upon which the car tracks exist."

In 1915 the selectmen of Reading, acting under the provisions of St. 1906, c. 463, Part II, § 115, in a petition to the Middlesex county commissioners, represented to that board in substance, that the overhead bridge at Lowell Street "is narrow and less than the width of the highway and said railroad crosses the highway so as to obstruct it, contrary to the law made and provided, the bridge being in bad alignment with the approaches thereto, inconvenient and in need of greater width and repairs for the accommodation of the travel on the highway;" and prayed that, after notice to the corporation which owns and operates the railroad, and a hearing, the commissioners "will make a decree prescribing what repairs shall be made by the corporation at the crossing." Upon said petition the county commissioners after due notice and a view gave a hearing, and thereupon found ". . . that by reason of such unauthorized narrowing said way at said bridge is now some thirty-eight (38) feet less in width than its legal location; that it therefore appears that the said railroad does not cross said public way so as not to obstruct it, but on the contrary the construction and operation of said railroad as carried out and maintained con-

stitutes an unlawful obstruction of said way, and has been and is an unwarranted interference with public travel thereon; and that no decree of any competent tribunal has ever been obtained authorizing or legalizing such obstruction." On January 1, 1916, the board of county commissioners made a decree "prescribing what repairs shall be made by the said" railroad corporation "at said crossing and the time within which they shall be made. . . ." On May 10, 1916, the railroad corporation brought this petition, alleging that the proceedings were irregular, illegal and void for reasons stated in fifteen paragraphs. It was agreed that the existing "bridge or structure was not itself physically out of repair prior to and at the time of the entry of the commissioners' decree and said decree was not based upon any finding that the bridge or structure itself was not in good condition and repair; that the commissioners did not intend and did not in fact find that the structure as it existed needed any repairs whatever." In view of the stipulation and terms of the decree the petitioner contends that the work ordered to be done was not repairs within the meaning of St. 1906, c. 463, Part II, § 115, but was an alteration within the meaning of St. 1906, c. 463, Part I, § 23; that the petition of the selectmen should have been brought under § 23, and that the board of county commissioners were without jurisdiction to make the decree it did make on the petition upon the "supposed authority" of § 115.

Upon the findings of fact above recited the bridge was an obstruction to travel over Lowell Street when the decree was entered and had long occasioned a dangerous interference with the use of that street. The bridge was built by the railroad corporation. It is long since settled that the obligation of a railroad corporation not to obstruct at a crossing the use of a public way is a continuous one, not measured by its duty when the way was located, but one that enlarges to meet the statutory requirements that public ways shall be kept reasonably safe and convenient for travellers at all seasons of the year. *Dickinson* v. *New Haven & Northampton Co.* 155 Mass. 16. *Selectmen of Holliston* v. *New York Central & Hudson River Railroad,* 195 Mass. 299, 304. *New York Central & Hudson River Railroad* v. *County Commissioners,* 220 Mass. 569.

If we assume that there was an obstruction to travel which was

attributable to the conformation of the bridge which the railroad corporation built as a part of the street over its location, we think the provisions of § 115, *supra*, may be invoked to compel the railroad corporation to remove the obstruction by an order of the commissioners to change the form of the obstruction to any degree which shall be necessary to overcome its objectionable features or conditions, even if it involves the construction of a new bridge. And we further think that the work done in pursuance of such order is a repair and not an alteration of that which originally was insufficiently or imperfectly done.

The petitioner further contends that the word "obstruct," as used in Rev. Sts. c. 39, § 66, in St. 1906, c. 463, Part II, § 115, and in the intermediate antecedent statutes must be taken to mean "to wholly block up" and not to mean "to impede, hinder or retard a person or thing in motion." We have carefully examined and compared the statutes cited in the petitioner's brief and we are not convinced by the argument of the petitioner that the natural and logical meaning of that word is "to wholly block up." If such were the true construction there would be no relief by statute for any impediment of the way which did not wholly obstruct the way except upon a petition for an alteration of the way under St. 1906, c. 463, Part I, § 23. We are of opinion that the law is settled to be otherwise, *Selectmen of Holliston* v. *New York Central & Hudson River Railroad, supra,* and cases cited, and that a petition will lie under § 115 whenever the way is obstructed, to remedy that condition.

We do not think the fact that the abutments to the bridge have stood within the location of the way more than forty years justifies their continuance by the railroad corporation under R. L. c. 53, § 1.

*Petition dismissed.*