BOSTON AND MAINE RAILROAD *vs*. COUNTY COMMISSIONERS
OF WORCESTER.

Worcester. May 4, 1938. — May 26, 1938.

Present: RUGG, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Railroad*, Bridge. *Way*, Public: bridge over railroad. *Bridge*.

Under an order made by the metropolitan water and sewerage board
by authority of St. 1895, c. 488, § 6, and by agreement with a railroad
corporation and with approval of county commissioners, relocating a
public way, directing the construction of a temporary wooden bridge
for the way over a new branch of the railroad and ordering the cor-
poration to maintain the bridge, the corporation's duty to maintain
was not limited to the life of the wooden bridge, and, upon its refusal
thirty years later further to maintain the bridge after it had become
decayed and beyond repair, the county commissioners had authority
under G. L. (Ter. Ed.) c. 160, § 106, to require the corporation to
construct a new steel and reinforced concrete bridge.

PETITION, filed in the Supreme Judicial Court for the
county of Worcester on January 12, 1938, for a writ of cer-
tiorari.

The case was reserved and reported by *Qua*, J., upon the
petition, a return and a supplemental return, and was sub-
mitted to the full court on briefs.

*A. S. Houghton*, for the petitioner.

*A. T. Saunders & W. P. Constantino*, for the respondents.

LUMMUS, J. After a hearing upon the petition of the
selectmen of Clinton, the respondent board, on December
14, 1937, ordered the petitioner to construct a new steel and
reinforced concrete bridge to carry the highway from West
Boylston to Clinton over a part of the railroad called the
Y-branch, in the place of the existing wooden bridge built
by the petitioner as early as 1904 and maintained by the
petitioner until recently, which has now become decayed,
unsafe and beyond repair. A single justice of this court
reserved for the full court a petition for a writ of certiorari.

When under St. 1895, c. 488, the Wachusett Reservoir

was constructed by the Metropolitan Water Board, the powers of which were transferred to the Metropolitan Water and Sewerage Board by St. 1901, c. 168, parts of the railroad were relocated and a new piece of railroad, called the Y-branch, was built, connecting the line running east and west and the line running north and south, which lines met at Clinton Junction. The highway from West Boylston to Clinton, which was relocated and made to run across the slope of the north dike of the reservoir, was carried over the Y-branch on the present wooden bridge.

The Metropolitan board was empowered by statute to "raise or alter or discontinue parts of any railroad or public ways, and in case of a railroad shall make such raisings or alterations of the railroad, or construct upon existing or other locations, parts of the railroad to take the place of the parts so discontinued, as, and in such manner as, shall be mutually agreed upon by said water board and the board of directors of the railroad company . . . ." St. 1895, c. 488, § 6. The Metropolitan board had authority to "build in place of the parts of public ways discontinued, as aforesaid, such other reasonable and suitable ways, which shall thereafter be highways, as, and in such manner as, shall be mutually agreed upon by said water board and the county commissioners . . . ."

On July 17, 1902, the Metropolitan board made a determination in regard to certain railroad crossings, including the one in question. The determination reëstablished the grades of the highway at and near the point in question. It included an order for the construction of the wooden bridge in question, "said bridge to be maintained by the railroad corporation having the control for the time being of the railroad beneath said bridge," which was the petitioner. This determination was in accordance with an agreement between the Metropolitan board and the petitioner. It was approved and agreed to on July 22, 1902, by the then county commissioners. See G. L. (Ter. Ed.) c. 160, § 100. The wooden bridge, which was built by the petitioner, was intended as a temporary bridge, for it was located on newly filled ground that would not permit the

use of masonry and steel. For nearly thirty years the petitioner maintained the wooden bridge and kept it in repair, but refuses to continue to do so.

The petitioner contends that it is subject to no duty and that the respondent board was without jurisdiction.

Where a public way and a railroad must cross each other, the expense of constructing the crossing ordinarily falls on the newcomer. If the way is newly built to cross an existing railroad, "all expenses of and incident to constructing and maintaining the way at such crossing shall be borne by the county, city, town or other owner of the same." But if the railroad is newly built to cross an existing way, the railroad corporation must "construct, maintain and keep in repair all bridges, with their approaches and abutments, which it is authorized or required to construct over or under a . . . public way." G. L. (Ter. Ed.) c. 160, § 107. *Sawyer* v. *Northfield,* 7 Cush. 490, 497, 498. *Titcomb* v. *Fitchburg Railroad,* 12 Allen, 254. *Carter* v. *Boston & Providence Railroad,* 139 Mass. 525. *Dickinson* v. *New Haven & Northampton Co.* 155 Mass. 16. *Nichols* v. *Boston & Maine Railroad,* 174 Mass. 379. See also G. L. (Ter. Ed.) c. 160, §§ 97, 98. "A bridge under a highway, within the meaning of the . . . [statute], is a bridge for travellers to use as a part of the highway, crossing the railroad over the level thereof." *Whitcher* v. *Somerville,* 138 Mass. 454, 455. A bridge "over" a highway means a bridge upon which the railroad runs above the highway.

G. L. (Ter. Ed.) c. 160, § 106, provides that the selectmen may apply to the county commissioners when a railroad "so crosses a public way as to obstruct it" or a railroad corporation "refuses or neglects to keep a bridge . . . required or necessary at such crossing in proper repair"; and the county commissioners, after notice to the railroad and a hearing, upon finding the fact to exist, "may make a decree prescribing what repairs shall be made by the corporation at the crossing, and the time within which they shall be made." *Boston & Maine Railroad* v. *County Commissioners of Middlesex,* 239 Mass. 127, 136, 137.

We do not think that the duty of the petitioner to con-

struct and maintain the wooden bridge was limited to the life of that bridge. That was a temporary structure. Its span of life could not be very long. When it should come to an end, the duty to maintain the bridge must either be governed by general laws, or must become an unsettled question governed by no rule. The latter alternative could scarcely have been intended. Although both the Y-branch of the railroad, and the highway, were newly located when the wooden bridge was built, the highway was a relocation of an earlier highway, while the Y-branch was wholly new. In our opinion it was not a case in which "the county commissioners authorize a public way to be laid out across the railroad," but a case where a railroad is authorized or required to construct a bridge "under a . . . public way." G. L. (Ter. Ed.) c. 160, § 107. The duty to "maintain and keep in repair" such a bridge and not to obstruct the public way, includes the duty to replace the bridge when it ceases to be usable and becomes an obstruction to travel. *Boston & Maine Railroad* v. *County Commissioners of Middlesex*, 239 Mass. 127, 137. When the petitioner accepted the duty of maintenance, and performed it for nearly thirty years, we think it recognized its permanent legal obligation.

*Petition dismissed.*