EDWARD M. NICHOLS & others *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.   March 22, 23, 1899. — October 19, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Alterations in Highway Bridge over Railroad — Remedy — Statute — Railroad — Decree of County Commissioners — Equity.*

Where alterations in a highway in a town which crosses a railroad by a bridge are deemed necessary for the security or convenience of the public, a petition to the county commissioners under Pub. Sts. c. 112, §§ 129 *et seq.*, is the appropriate remedy.

The provisions of Pub. Sts. c. 112, are not limited, by § 3, to corporations incorporated after the eleventh day of March, 1831.

Under Pub. Sts. c. 112, § 5, the Boston and Maine Railroad became subject to all the provisions of that chapter relating to the maintenance and operation of the railroad leased by it of the Boston and Lowell Railroad Corporation, and whatever might be the charter of the latter corporation as to such maintenance and operation, this was no longer effective after the two corporations had executed the lease.

The validity of a decree of the county commissioners, upon the petition of the selectmen of a town, ordering a bridge in a highway over the tracks of a railroad corporation to be widened and extensive changes to be made, all at the expense of that corporation, may be inquired into upon a bill in equity, under Pub. Sts. c. 112, § 136, to enforce the decree.

---

· BILL IN EQUITY, filed August 8, 1898, by the selectmen of Wilmington, under Pub. Sts. c. 112, § 136, to enforce a decree of the county commissioners, ordering the defendant to make certain alterations in a highway over its railroad in that town. The defendant demurred to the bill for want of equity. Hearing before *Hammond,* J., who, at the request of the parties, reserved the case for the consideration of the full court. If the demurrer was sustained, a final decree was to be entered dismissing the bill; otherwise, a decree was to be entered for the plaintiffs. The facts appear sufficiently in the opinion.

*W. H. Coolidge & E. J. Rich,* for the defendant.

*C. W. Clark,* for the plaintiffs.

LATHROP, J.  The county commissioners of Middlesex County, under a petition filed by the selectmen of Wilmington, which set forth a case under the Pub. Sts. c. 112, § 129, and which asked relief under that section " and all other sections of said chapter applicable to the case," passed a decree on November 7, 1897, which we are asked to enforce by a bill in equity, under § 136 of the chapter above named.

At the hearing before the commissioners the selectmen orally waived any right that they might have under § 129, and asked relief under §§ 119, 128, and 135.  The decree of the commissioners ordered the bridge, under which are the tracks of the defendant railroad, to be widened, and extensive changes to be made, all at the expense of the defendant.  It also stated that the commissioners determined that the railroad crossed a certain street " in a manner so as to obstruct the same, contrary to a decree made by the county commissioners in the year 1887, and against the security and convenience of the public," and ordered the work to be done by the railroad company.

An examination of the provisions of the Pub. Sts. c. 112, §§ 119–136, shows that three classes of cases are provided for: 1. The construction of a railroad over a pre-existing highway, either at grade or by passing over or under the highway.  §§ 119–121, 128.  Here the expense falls entirely upon the railroad. 2. The construction of a highway over a pre-existing railroad, either at grade or by passing over or under the railroad.  §§ 125, 128.  Here the entire cost of the original construction of the crossing falls upon the town, city, or county which lays out the

highway. 3. The alterations in the method of crossing, after the original construction of the crossing. It seems to us clear that this subject is intended to be covered by § 129 and the following sections. These sections are amended by the Sts. of 1885, c. 194, and 1887, c. 295; but not in such a way as to affect the question before us. Under these sections provision is made for a special commission to determine how the expense is to be apportioned. That an alteration such as is here ordered comes within the scope of § 129 and the following sections, and that a petition under these sections is the appropriate remedy in a case like the one before us, appears from our decisions. *Lancaster* v. *County Commissioners,* 113 Mass. 100. *Boston & Albany Railroad* v. *County Commissioners,* 116 Mass. 73, 79. *Boston & Albany Railroad* v. *County Commissioners,* 164 Mass. 551. *New England Railroad* v. *Railroad Commissioners,* 171 Mass. 135.

The plaintiffs, however, contend that § 129 and the following sections do not apply, for the reason that the Boston and Lowell Railroad Company, the lessor of the defendant, was incorporated prior to March 11, 1831, and that by § 3 of the Pub. Sts. c. 112, the provisions of the chapter are limited to corporations incorporated after that date. We do not so understand the language of the section. It provides that all railroad corporations theretofore established, whether by special act or certain general laws, shall have the powers and privileges, and be subject to the duties, liabilities, restrictions, and other provisions contained in the chapter. It then declares that these, " so far as inconsistent with charters granted since the eleventh day of March in the year eighteen hundred and thirty-one, shall be deemed and taken to be in alteration and amendment thereof; but nothing herein contained shall be construed to impair the validity of any special power heretofore conferred by charter or other special act upon a particular railroad corporation which had exercised such power before the first day of February in the year eighteen hundred and seventy-five, or to prevent the continued exercise thereof conformably, so far as may be, to the provisions of this chapter."

The ground on which the plaintiffs invoke the above section is that in the charter of the Boston and Lowell Railroad (St. 1830, c. 4) it is provided in § 11 that if the railroad shall, in the course

thereof, cross any canal, turnpike, or other highway, the rail-road shall be so constructed as not to impede or obstruct the safe and convenient use of such canal, turnpike, or other high-way. Power is given the corporation to raise or lower the highway, so that the railroad, if necessary, may conveniently pass under or over the same. This is to be done so as to be satisfactory to the selectmen of the town in which the highway is situate. If not so done the selectmen may require in writing of the corporation such alteration or amendment as they may think necessary. If the required amendment or alteration is reasonable and proper, and the corporation unnecessarily and unreasonably neglects to make the same, the selectmen may proceed to make such alteration or amendment, and may insti-tute and prosecute to final judgment or execution, in any court proper to try the same, any action of the case against the cor-poration, and shall therein recover a reasonable indemnity in damage for all charges, disbursements, labor, and services, occasioned by making such alteration or amendments, with costs of suit.

We have no occasion to consider whether the Pub. Sts. c. 112, §§ 129 *et seq.*, interfere with any special power granted by the charter of the Boston and Lowell Railroad Corporation, for it is obvious that, if they do, none of the provisions of the statute under which the county commissioners acted can apply to that corporation or to the defendant, and that the plaintiffs would be left to their remedy under the charter, and the proceedings of the county commissioners, which we are asked to enforce, would be void.

Furthermore, the bill alleges that, under authority of the St. of 1869, c. 459, and of the St. of 1883, c. 67, the Boston and Lowell Railroad Corporation executed to the defendant a lease of its railroad and railroad property and franchises for the term of ninety-nine years from and after April 1, 1887; and that the lease provided, among other things, that the lessee should use and operate the railroads and properties demised in accordance with the charter of the lessor and the laws of the Commonwealth of Massachusetts. It further al-leges that the defendant took possession of the leased property immediately after the execution of the lease, and commenced

to operate, and has ever since operated, said railroad; and thereby the defendant assumed the duties and liabilities imposed by the Pub. Sts. c. 112, § 5.

The section of the Public Statutes above referred to is as follows: " When a railroad laid out and constructed by one corporation is lawfully maintained and operated by another corporation, the latter shall be subject to the duties, liabilities, restrictions, and other provisions set forth in this chapter respecting or arising from the maintenance and operation of such railroad, in the same manner as if it had been laid out and constructed by said latter corporation." It seems to us clear that under this section of the statute the Boston and Maine Railroad became subject to all the provisions of the Pub. Sts. c. 112, relating to the maintenance and operation of its leased road, and that, whatever might be the charter of the Boston and Lowell Railroad Corporation, as to such maintenance and operation, this was no longer effective after the two corporations had executed the lease. But this does not aid the plaintiffs' contention. The defendant was entitled to have the question who was to pay the expenses of the alterations passed upon in accordance with the other provisions of the chapter.

The plaintiffs further contend that the decree of the county commissioners cannot be inquired into in this proceeding; and that this can be done only by a writ of certiorari. But we are of opinion that this is not the true construction of the Pub. Sts. c. 112, § 136. The language of the section, so far as material to this case, is: " The Supreme Judicial Court may by proceedings in equity compel railroad corporations to raise or lower a highway or townway, when the county commissioners have decided that such raising or lowering is necessary for the security of the public, and to comply with the orders and decrees of county commissioners in all cases touching obstructions to such ways by railroads."

The earliest statute which gave this court jurisdiction in such matters is the St. of 1849, c. 222, § 5, which is in these words: " The Supreme Judicial Court shall have jurisdiction in equity, and may compel railroad corporations to raise or lower any turnpike, highway, or townway, when the county commission-

ers have decided, or may decide, in due and legal form, that such raising or lowering of any such way is necessary for the security of the public, and to compel railroad corporations to comply with the orders, decrees, and judgments of county commissioners, in all cases touching obstructions by railroads in any of said ways." The words "in due and legal form" appear in the Gen. Sts. c. 63, § 63, and in the St. of 1874, c. 372, § 103. They are omitted in the Commissioners' Report on the Revision of the Statutes of 1881; but the commissioners state: "We have endeavored to express in the text of our revision the existing laws, according to our understanding of them, in such a manner that no existing rights shall be changed. . . . Since we have not intended to change the substance of the law, we believe it to be unnecessary to give in detail the reasons for any changes in phraseology." Commissioners' Report, 1. It would seem, therefore, that the statute is to be construed as if the words "in due and legal form" were still in the statute. But, without placing too much stress upon these words, we are of opinion that the court, when its jurisdiction is invoked under this statute, has the right to inquire whether the county commissioners have acted in excess of their jurisdiction. *Roxbury* v. *Boston & Providence Railroad,* 6 Cush. 424. *Dickinson* v. *New Haven & Northampton Co.* 155 Mass. 16, 20. See also *Commonwealth* v. *Vermont & Massachusetts Railroad,* 4 Gray, 22.

The demurrer must therefore be sustained; and in accordance with the terms of the report, a final decree is to be entered dismissing the bill.

*So ordered.*