NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY & another *vs.* COUNTY COMMISSIONERS OF MIDDLESEX.

Middlesex.    March 9, 1915. — April 1, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*County Commissioners.    Railroad,* Obstruction of public way.    *Way,* Public. *Words,* " Repairs," " Alteration."

Where, on a petition of the selectmen of a town to county commissioners under R. L. c. 111, § 132, seeking an order that an alleged obstruction of a public way at a point where a railroad passed beneath it be stopped, the commissioners found that a fence on the easterly side of the way was a monument fixing that boundary, that there were old walls and fences at various places along the way that showed that it always had been two rods wide, that witnesses who had known the way before the railroad was built testified that it did not narrow at the place where the railroad afterwards crossed, and that there were records of a widening and straightening of the way in 1847 and a railroad location plan filed in 1848 which showed the way to be of a uniform width of two rods, a determination by the commissioners that a fence constructed by the railroad company in 1882 twelve feet within the westerly boundary of the way was an obstruction to the way is not contrary to the provision of R. L. c. 53, § 1, discloses no error of law and is conclusive.

A narrowing by a railroad company of a public highway two rods in width by the construction and maintenance of a fence twelve feet within one of its side lines at a point where the railroad passes under the way may be found to constitute an obstruction of the way, the existence of which it was exclusively within the province of the county commissioners to determine in proceedings under R. L. c. 111, § 132.

Where, on a petition by the selectmen of a town to the county commissioners alleging that a fence maintained by a railroad company within the limits of a public way at a point where the railroad passes beneath the way is an obstruction and praying that the way be restored to its proper width, the commissioners find that the way is two rods in width and that the obstruction exists, narrowing the way, and order that the roadway at the crossing be graded two rods in width, that guard rails be erected at the sides, that twenty-two feet be constructed as a roadway and five and a half feet on each side be reserved for sidewalk purposes, that the sidewalk on one side be constructed, and that the railroad corporation pay the costs of the application and of the repairs, such order is an order for "repairs" under R. L. c. 111, § 132, and cannot be said to be an order for an "alteration" under § 134.

PETITION, filed on May 31, 1907, for a writ of certiorari to quash proceedings of the county commissioners of Middlesex County (hereinafter called the county commissioners) directing the petitioner New York Central and Hudson River Railroad Company (hereinafter called the petitioner) to restore Highland Street in Holliston to its original width of thirty-three feet at a point where the petitioner's railroad passed under the street.

It appeared that on October 30, 1905, the selectmen of Holliston filed a petition with the county commissioners alleging that by the construction of the railroad in question in 1847 Highland Street was made narrower at the point at which the railroad passes under the street, that the railroad maintained a fence along the westerly side of the public way twelve feet or thereabouts from the westerly boundary of the public way, and that such fence was a danger and menace to the public and was an obstruction of which the selectmen complained; and praying that the New York Central and Hudson River Railroad Company be ordered "to restore said public way to its proper width at the point complained of and that all costs of such restoration be assessed to the said railroad."

The county commissioners in their decree found the following facts: Highland Street, which existed as a public way before the construction of the railroad in the year 1847, was two rods wide at the place where the railroad crossed it. The railroad company in 1847 constructed its railroad across the street so as to pass under it "at a height of about forty feet under said way," necessitating by reason of methods employed a wide excavation some one hundred and fifty feet in width at the top of the excavation and narrowing at the bottom to a space sufficient for its track. A structure of masonry was built in the form of an arch about one hundred feet in length and high enough for the operation of the railroad therein, and the earth was replaced over the masonry arch up to the height of the original way and the surface of the way made passable for a width of about twenty-four feet with guard rails at the top of the slopes, "said twenty-four feet being the width of the top of the embankment." The width at the narrowest part of the present roadway at the crossing is less than twenty-one feet, the guard rails or fences having been moved toward the centre of the roadway about three feet owing to the washing away of the banks.

The commissioners further found "that no decree was obtained at the time of making the alterations in the way; that the construction of said crossing as carried out was unauthorized; that the way by reason of the unauthorized work performed was narrowed, and is now some twelve feet narrower than the original way; that it appears that the railroad does not cross the public way so as not to obstruct it; that the construction and operation of said railroad as carried out and maintained constitutes an unlawful obstruction of said way, and has been and is an unnecessary interference with the public travel thereon; that no decree was obtained permitting the narrowing of said way." The commissioners therefore made "a decree prescribing what repairs shall be made by the corporation at the crossing, the time within which they shall be made, and do now order the corporation to pay the costs of the application and of said repairs."

The decree was as follows: "The roadway over the crossing of the location of the said railroad shall be graded to the lines shown in red upon the above mentioned plan at the height of the present roadway, and the guard rails erected so as to give thirty-three feet in width across said railroad location. Twenty-two feet in width thereof in the centre shall be a roadway properly crowned, drained and graded, and five and one half feet on each side is to be reserved for sidewalk purposes, with the sidewalk actually constructed on the southwesterly side.

"And the said corporation shall build such retaining walls or other structures as are necessary to maintain the slopes at an angle thirty-three and one half degrees with the horizon.

"The repairs shall be completed before June 1, 1906."

Evidence upon which some of the findings were made is stated in the opinion.

On July 15, 1906, the selectmen of Holliston brought a bill in equity against the railroad company seeking specific performance of the decree of the county commissioners. A decree of a single justice dismissing the bill was reversed by this court by a decision reported in 195 Mass. 299 and specific performance was ordered. Thereafter this petition was brought.

The case was reserved by *Carroll*, J., for determination by this court.

*R. A. Stewart*, for the petitioners.

*G. L. Mayberry*, for the respondents.

DE COURCY, J.  This is a petition for a writ of certiorari to quash certain proceedings of the board of county commissioners.  The Milford branch of the Boston and Albany Railroad, now leased to the New York Central and Hudson River Railroad Company, passes under Highland Street, a public way in the town of Holliston.  The selectmen of Holliston brought a petition under R. L. c. 111, § 132, alleging that the railroad so crossed Highland Street as to narrow and obstruct it.  The county commissioners, after due notice and hearing, made certain findings and ordered the petitioner to make specified repairs at the crossing, restoring Highland Street within the railroad location to the width of thirty-three feet.

The petitioner contends that the record of the proceedings of the county commissioners discloses an error of law in their determination that the fence erected on the westerly side of Highland Street is an obstruction of the way.  This objection is based mainly on the argument that the fence had stood so long that the commissioners were bound to adopt it as the true westerly boundary of the way by virtue of R. L. c. 53, § 1.  The commissioners have found that it was constructed within forty years, namely in 1882.  Hence they were not compelled to take it as the true limit of the way unless "the boundaries thereof are not known and cannot be made certain by the records or by monuments."  They set forth in their answer the following facts, among others, on which they found that the way had been narrowed, namely: That the fence on the easterly side of the street constituted one monument which fixed the easterly boundary; that there were old walls and fences at various points along both lines of Highland Street which indicated that this ancient road always had been two rods wide; that witnesses who had known the road at a time before the railroad was built testified that then there had been no narrowing of the road at the point where the railroad afterwards crossed; that records were presented to them showing a widening and straightening of portions of the road July 17, 1847, the effect of which was to make those portions correspond to the two rods' width of the rest of the road; and that the railroad location plan, filed January 3, 1848, showed the street to be of uniform width.  It does not appear that objection was made to

the competency of any of the evidence admitted by the commissioners, nor were they asked to certify the evidence upon which they made their findings of fact. As the case stands, their finding that the way is now some twelve feet narrower than the original way is conclusive. *Wood* v. *Quincy,* 11 Cush. 487. *Commonwealth* v. *Old Colony & Fall River Railroad,* 14 Gray, 93. *Tewksbury* v. *County Commissioners,* 117 Mass. 563. *Ward* v. *Aldermen of Newton,* 181 Mass. 432. *Banaghan* v. *County Commissioners,* 213 Mass. 17.

Such a narrowing of the street, and the maintenance of a fence within its true limits, well may be found to constitute an obstruction of the way, by rendering it inconvenient for travel. And it was exclusively within the province of the commissioners to determine the fact that an obstruction existed, and that it was due to the encroachments of the petitioner. *Selectmen of Holliston* v. *New York Central & Hudson River Railroad,* 195 Mass. 299, 305. In this connection it is to be remembered that the obligation not to obstruct a highway, created by R. L. c. 111, § 124 (formerly Rev. Sts. c. 39, § 66), is a continuing one. Even if no sanction or approval of the county commissioners or of the town authorities was required when this crossing was constructed, and its original construction was valid (see St. 1846, c. 271, § 1), nevertheless, if the crossing later became an obstruction, proceedings could be brought to require the making of changes. *Dickinson* v. *New Haven & Northampton Co.* 155 Mass. 16. *Selectmen of Holliston* v. *New York Central & Hudson River Railroad,* 195 Mass. 299, 304.

It is further contended that the work prescribed by the decree of the county commissioners is an alteration, rather than repairs, and that as matter of law the cost cannot be placed wholly upon the petitioner. This objection apparently was disposed of in the equity suit (195 Mass. 299), wherein the court said at page 306: "The decree being sufficiently full and exact, and the board not having exceeded their jurisdiction, no sufficient reason is shown why specific performance should not be decreed." And even regardless of the effect of that decision, we cannot say as matter of law that the work at the crossing prescribed in the decree of the county commissioners was an alteration and not "repairs" within the scope of R. L. c. 111, § 132, — the cost of which must be borne by the railroad corporation. The question does not

involve the distinction between general and specific repairs (see *Sullivan* v. *Fall River,* 144 Mass. 579), but between "repairs" under § 132 and an "alteration" under § 134. The term "alteration" is used technically in the legislation upon the subject of highways as indicating a change of location in an intermediate section of an existing way, the establishment of a new section in substitution of a part of the old way. As was said in *Bigelow* v. *Worcester,* 169 Mass. 390, 393, "A technical alteration is the substitution of one way for another." To the same effect see *Bliss* v. *Deerfield,* 13 Pick. 102, 106; *Gloucester* v. *County Commissioners,* 3 Met. 375, 379; *Goodwin* v. *Marblehead,* 1 Allen, 37; *Johnson* v. *Wyman,* 9 Gray, 186, 189. Without attempting to lay down a general definition of these words as used in the statute which would be applicable to all cases that may arise, we are of opinion that the work here ordered by the commissioners was not an "alteration." It called for no change in the course or limits of the original location of Highland Street. It prescribed repairs within the highway location that presumably were reasonably adapted to prevent an unnecessary interference with public travel over the crossing. *Selectmen of Westborough, petitioner,* 169 Mass. 495.

The case of *Nichols* v. *Boston & Maine Railroad,* 174 Mass. 379, relied on by the petitioner, involved an order for alterations and not repairs. The petition of the selectmen to the county commissioners set forth a case under Pub. Sts. c. 112, § 129 (now R. L. c. 111, § 134), and asked for relief under that section; and the decree of the commissioners ordered certain "alterations" to be made at the expense of the railroad company.

<div align="right">

*Petition dismissed.*