BOSTON AND ALBANY RAILROAD COMPANY & another *vs.*
DEPARTMENT OF PUBLIC UTILITIES & another.

Suffolk.   October 5, 1943. — October 28, 1943.

Present: FIELD, C.J., LUMMUS, COX, & RONAN, JJ.

*Railroad,* Bridge. *Way,* Public: bridge over railroad. *Bridge. Equity Jurisdiction,* Public utilities. *Supreme Judicial Court,* Jurisdiction. *Words,* "Alteration," "Repairs."

In a proceeding in equity under G. L. (Ter. Ed.) c. 25, § 5, the court deals with rulings or orders of the department of public utilities only to the extent that they are unlawful, and has no power to review or revise the department's findings of fact.

Extensive work consisting of replacing deteriorated parts of a worn out and unsafe highway bridge over a railroad at a cost of more than thirty per cent of the cost of building a new structure, but undertaken only to restore the structure to its original sound condition and not to make any structural change in it nor to increase its strength beyond its original strength, was not an "alteration" of the bridge within G. L. (Ter. Ed.) c. 159, § 59, as amended by St. 1933, c. 326, § 1.

The meaning of the word "alteration" in the predecessors of G. L. (Ter. Ed.) c. 159, § 59, was not broadened by St. 1902, c. 533, nor by St. 1908, c. 542, § 1.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on December 21, 1942, by Boston and Albany Railroad Company and The New York Central Railroad Company against the Department of Public Utilities.

The city of Boston was allowed to intervene as a respondent.   The case was heard by *Dolan,* J., by whose order a decree dismissing the petition was entered.   The petitioners appealed.

*G. H. Fernald,* (*W. L. Parsons* with him,) for the petitioners.

*H. Freed,* Assistant Corporation Counsel, (*J. E. Farley,*

Assistant Attorney General, with him,) for the respondent and the intervener.

RONAN, J. This is an appeal from a decree of a single justice of this court dismissing a petition brought by the petitioners under G. L. (Ter. Ed.) c. 25, § 5, to review and annul an order or decision of the department of public utilities, made in a proceeding upon petition of the city of Boston relative to alterations, structural changes and repairs to be made in a portion of the bridge that carries Broadway, a public way, over the location and tracks of the Boston and Albany Railroad Company. This bridge was built in 1900 in accordance with St. 1896, c. 516, § 11. Since then it has been maintained by the city of Boston. The work comprehended in the petition filed by the city with the department consisted of the removal and replacement of the entire floor system, including the steel floor beams, sidewalk brackets, wooden stringers, underplanking and wearing surface. All or some of the steel hangers which support the floor beams were to be renewed. These floor beams not only support the floor but furnish important lateral bracing to the bridge. The floor beams, diagonal braces and other steel parts of the bridge immediately above the tracks have become deteriorated by the weather and exhaust gases from locomotives and have made the bridge unsafe and dangerous. The estimated cost of the proposed work was nearly $77,000. It would cost $250,000 to build a new structure. The department found that the work contemplated was substantial, involving "in degree" more than ordinary maintenance and repair, and that its performance was required "for the security and convenience of the public as well as for the proper maintenance or repair of the bridge." The department found that the renewal of the steel floor beams and hangers will greatly strengthen the bridge and improve its present condition, but it does not appear that they will increase its strength beyond that for which the bridge was originally designed. In the judgment of the department the work was "of such a nature as to involve, at least in the case of the floor beams and hangers, a structural renewal of the bridge in order to strengthen

and improve it, up to its original strength, and therefore brings the case within the provisions of said section 59 as amended, rather than the provisions of said section 84." The department prescribed the work to be done in accordance with the plans and specifications filed with the petition of the city, and denied certain requests for rulings filed by the railroad corporations, which were to the effect that the work proposed was not an alteration within G. L. (Ter. Ed.) c. 159, § 59, as amended by St. 1933, c. 326, § 1.

Upon an appeal from a decree by a single justice upon a petition under G. L. (Ter. Ed.) c. 25, § 5, we have no power to review or revise findings of fact made by the department. We can deal only with rulings or orders shown by the petitioner to be unlawful and then only to the extent that they are unlawful. *Paine* v. *Newton Street Railway*, 192 Mass. 90. *City Council of Salem* v. *Eastern Massachusetts Street Railway*, 254 Mass. 42. *New England Telephone & Telegraph Co.* v. *Department of Public Utilities*, 262 Mass. 137. There seems to be no dispute as to the size, type, structure or any other physical characteristic of the bridge, or the details of the work to be done, or the necessity for its performance. The subsidiary findings of the department fully set forth the nature, extent and cost of the work, and the changes to the bridge that will result upon its completion. Starting with these subsidiary findings our inquiry is limited to determining whether upon the subsidiary facts found the order was unlawful. *Boston & Albany Railroad* v. *New York Central Railroad*, 256 Mass. 600.

Section 59, as amended by St. 1933, c. 326, § 1, provides that "If a public way and a railroad cross each other, and the board of aldermen . . . deem it necessary for the security or convenience of the public that an alteration not involving the abolition of a crossing at grade should be made in the crossing, the approaches thereto, the location of the railroad or way, or in a bridge at the crossing, they shall apply . . . if the crossing is situated . . . in Boston, to the department of public utilities, which shall, after public notice, hear all parties interested, and, if it decides that such alteration is necessary, shall prescribe the manner

and limits within which it shall be made . . . . This proceeding may include any case where there is need of the rebuilding of a highway bridge or any structural change or renewal in order to strengthen or improve it. If any railway company is authorized to lay and use tracks upon the said way, the said company shall bear such part of the expense of building, rebuilding, changing, renewing, repairing or improving a bridge forming a part of said way, or of altering or improving the approaches thereto, as the commission provided for in sections sixty-one and sixty-two deem just." Section 84 of chapter 159 provides that "If . . . the board of aldermen of a city . . . where a bridge at the crossing of a public way and a railroad, or a bridge upon which a railway company is authorized to lay and use tracks, is located in whole or in part . . . are of the opinion that such bridge is in need of maintenance or repair, they may apply to the department, which shall, after public notice, hear all persons interested, and, if it decides that the work of maintenance or repair is necessary, shall prescribe the manner in and the limits within which it shall be done, and shall forthwith certify its decision to the parties."

Whether the work was a repair or an alteration depends upon the meaning of these words in the sections just quoted. The terms of a statute are to be interpreted in accordance with their plain, natural and ordinary meaning in the absence of anything contained in the statute indicating that they were employed in a particular or limited sense or as words of art having only a restricted or technical import. *Doane* v. *Phillips*, 12 Pick. 223. *Bornbaum* v. *Employers' Liability Assurance Corp. Ltd.* 311 Mass. 282. An alteration when used in reference to a structure usually denotes a change or substitution made in a particular part of a structure of such a substantial nature as to make the structure itself or an important part thereof materially different from what it formerly was. On the other hand, a repair is merely correcting the damage done sometimes by accident or fire or other cause, but more often due to the ravages of time and the deterioration resulting from wear and tear, by substituting for the damaged, decayed or worn out parts, new

material, usually similar to that replaced, and so restoring the structure to its original sound condition. Repairing is simply mending defective portions of a structure, while an alteration is a change of such a nature and extent as to produce a different structure or a structure so changed in some essential aspects as to constitute a different structure in these particulars. *Todd* v. *Rowley*, 8 Allen, 51. *Dwight* v. *Ludlow Manuf. Co.* 128 Mass. 280. *Perry* v. *J. L. Mott Iron Works Co.* 207 Mass. 501. *Commonwealth* v. *Hayden*, 211 Mass. 296. This same distinction between alterations and repairs has been observed in construing leases, and in determining the allocation to principal or income of expenses arising from alterations and repairs of real estate held in trust. *Sohier* v. *Eldredge*, 103 Mass. 345. *Jordan* v. *Jordan*, 192 Mass. 337. *Cawley* v. *Jean*, 218 Mass. 263. *Borden* v. *Hirsh*, 249 Mass. 205. Scott, Trusts, § 233.3.

Upon completion of the work prescribed by the department, the bridge will continue to be of the same size, width, elevation, construction, and strength as it was when first built. The work prescribed is nothing more than the restoration of a worn out structure, and the extent and cost of the repairs — approximately a little more than thirty per cent of a new structure — do not change the nature and character of the proposed work, which constitutes repair or maintenance and not an alteration as those words are commonly understood. If the term alteration is considered in the technical sense, which at times has been employed in statutes in reference to highways as meaning a change in the location of an intermediate section of a public way or the substitution of one way for another, *Bliss* v. *Deerfield*, 13 Pick. 102; *Bigelow* v. *City Council of Worcester*, 169 Mass. 390, the result would be the same. Obviously, there was no change of location of the bridge involved in the proceedings before the department.

The respondents contend that the term alteration should be given a broad construction consonant with the general aim and object of § 59, as amended, and that it should be interpreted as including repairs. They rely upon decisions sustaining orders made by the county commissioners under

G. L. (Ter. Ed.) c. 160, § 106, for the removal of obstructions from the highway, which arose from the neglect of a railroad corporation to keep a crossing bridge in proper repair, and which prescribed the work to be done in making the repair, and where the work was of such a character that it would ordinarily, and apart from this statute, be considered an alteration in the bridge. *Selectmen of Holliston* v. *New York Central & Hudson River Railroad,* 195 Mass. 299. *New York Central & Hudson River Railroad* v. *County Commissioners of Middlesex,* 220 Mass. 569. *Boston & Maine Railroad* v. *County Commissioners of Middlesex,* 239 Mass. 127. Compare *Nichols* v. *Boston & Maine Railroad,* 174 Mass. 379. Our statutes have for many years imposed an obligation upon a railroad corporation to maintain and keep in repair the bridges it has constructed over or under a public way and not to permit a crossing to be obstructed on account of a failure to keep a bridge or other structure at the crossing in proper repair. See Rev. Sts. c. 39, § 72; St. 1855, c. 350, § 2; G. L. (Ter. Ed.) c. 160, §§ 97, 106. In proceedings under c. 160, § 106, to remove an obstruction, the railroad corporation is the only party immediately affected, while a proceeding under c. 159, § 59, as amended, for an alteration in a crossing, other than one at grade, is the initial step which may result in apportioning expenses upon not only the railroad corporation but even upon the Commonwealth, counties and cities and towns and may also result in changing an existing obligation to keep the bridge in repair and impose that duty upon another. In any event, the work prescribed by the department must be an alteration and not a repair to come within § 59, as amended. *Boston & Albany Railroad* v. *County Commissioners of Hampden,* 164 Mass. 551. *New England Railroad* v. *Railroad Commissioners,* 171 Mass. 135. *Nichols* v. *Boston & Maine Railroad,* 174 Mass. 379. *Directors of Boston & Albany Railroad, petitioners,* 242 Mass. 455, 459. None of the decisions touching § 59, either before or after its amendment in 1908, which we shall presently discuss, contains any intimation that work of restoration or repair may be an alteration within the scope of this section.

The provisions of St. 1906, c. 463, Part I, §§ 23, 25, which were the predecessors of our present G. L. (Ter. Ed.) c. 159, §§ 59, 61, were amended by St. 1908, c. 542. Section 23 was amended by said c. 542, § 1, by adding to it the following: "This proceeding may include any case where there is need of the rebuilding of a highway bridge or any structural change or renewal for the purpose of strengthening or improving it" and by extending the liability of a street railway company authorized to use the way or bridge to pay a part of the costs so that the company became liable to bear "such part of the expense of building, rebuilding, changing, renewing, repairing or improving" the bridge as the commissioners appointed under § 25 should determine. Section 25 was amended by said c. 542, § 2, by appropriate changes to make plain that alterations in bridges are included in the alteration of crossings for which the railway company might file a petition and be required to pay a part of the expense.

The department decided that the work proposed, especially as it pertained to the floor beams and hangers, was a structural change or renewal for the purpose of strengthening the bridge, and ruled that it was an alteration within the definition of that word as it appears in what was added by the amendment of 1908.

The department misconstrued what was added to § 23 by the 1908 amendment and thought the word alteration as it now appears in the first part of § 59 was broadened in the last part of this section by the sentence that was added in 1908. The effect of this particular amendment was not to extend the operation of the section nor to amplify the meaning of the word alteration beyond that which it has always had since it first appeared in the original alteration statute. St. 1872, c. 262, §§ 1, 2. The purpose of this amendment in 1908 was to clarify what the statute had always covered and to make it plain that the scope of what is now § 59 "includes the alteration of bridges, or the renewal or rebuilding of bridges, as a part of an alteration in a crossing." *Aldermen of Fitchburg* v. *Boston & Maine Railroad*, 203 Mass. 304, 309.

A structural change or renewal for the purpose of extending or improving the bridge differs from a restoration of the structure to its original sound condition. This is evident from the legislative history of St. 1908, c. 542. This legislation arose from House, No. 939, which originally sought to amend what is now §§ 59 and 61 by extending its scope to a bridge that needed only repairs. The committee on railroads, to whom the bill was referred, reported the bill eliminating all references to repairs, and the bill as reported was passed and approved on May 26, 1908. This same committee reported House, No. 1081, which provided a method by which the department of public utilities could decide whether a bridge was in need of maintenance or repair and if such work was required could prescribe the manner and limits within which it should be done. It also provided means for the enforcement of the decision of the department. This bill was approved by the Governor on May 27, 1908, and became St. 1908, c. 552. See now G. L. (Ter. Ed.) c. 159, §§ 84, 85. It is thus apparent that the Legislature by these two acts, which were passed within a day of each other, intended to treat as an alteration structural changes that strengthened or improved a bridge and to treat as repairs work done for the purpose of restoring a bridge to proper condition. The substitution of a sound part for a decayed or worn out part of a structure ordinarily increases its strength, but the work on that account does not become more than an ordinary repair. On the other hand, a bridge might be wide enough to accommodate increased traffic but not strong enough to sustain the additional load. Doubtless, structural changes made in such a bridge for the purpose of enabling it to bear the heavier traffic would be an alteration within § 59. In the present case, the work when performed will not increase the strength of the bridge beyond that for which it was originally designed or do more than restore it to sound condition by eliminating weaknesses due to decay and deterioration. There is another result which might follow if mere repairs should be considered as an alteration. The party who was charged with the upkeep of the bridge could neglect to

maintain it in proper condition and then, when it had become unsafe, petition for a new apportionment of the expenses incurred in restoring the property and a possible change in the obligation as to future repairs.

The respondents finally argue that the wording of the portion of § 59 that provides that a street railway company "shall bear such part of the expense of building, rebuilding, changing, renewing, repairing or improving a bridge forming a part of said way" as the special commission may decide, indicates that the term alteration is used in an unrestricted sense and includes repairs. The word repair was first used, in what is now §§ 59 and 61, by St. 1902, c. 533, which recognized the benefits that street railway companies were deriving from the use of the public ways and imposed upon them a liability to pay not only for a part of the cost of making an alteration in a highway bridge and the approaches but also for a part of the cost of maintaining the same in proper condition. The object of St. 1902, c. 533, was to make a new party liable to pay a part of the expenses and not to change in any way the nature of the work out of the performance of which the expenses arose.

It follows that the decree appealed from must be reversed and a decree entered annulling the order of the department.

*Ordered accordingly.*