BRADLEY, Judge.
This case involves the applicability of section 34-2-32, Code 1975.
Albert Curry owns “Curry’s Disco and Lounge.” The lounge is a double-wide mobile home attached to a wood frame. Alcoholic beverages are sold at the lounge. In October 1985 Deputy State Fire Marshal Kenneth Flowers (appellant) inspected the lounge and found that the lounge presented a danger to life and property.
Specifically, Flowers found the following violations of fire laws and regulations at the lounge which needed to be corrected. (1) A sufficient number of exits from the building needed to be provided. There was only one exit from the lounge and most of the other doors and windows were boarded up. One door, although not covered, was padlocked. (2) The occupant load of the lounge was not posted as required by law. Seating was provided for 94; the maximum number of people that could legally occupy the lounge at any given time was 73. (3) Electrical wiring was exposed at various locations without any protective insulation. (4) A ventilation duct in the floor of the lounge was uncovered. (5) An electrical panel box and several electrical receptacles did not have protective covers. (6) Several extension cords were spliced with no protective insulation. (7) Means of egress were not illuminated. (8) No emergency lighting was provided. (9) Portions of the wood frame were extremely deteriorated. Flowers then stated in his inspection report that:
“The overall condition of this establishment is poor_ It is the opinion of this writer that the entire electrical system would have to be replaced by a licensed electrician to comply with the standards of the National Electrical Code. Due to the fact that all doors and windows have been covered, excluding the front door, and that exposed electrical wiring exists, an extremely dangerous hazard exists to life and property.”
The State Fire Marshal, Roy Thomell, subsequently made factual and legal findings based on Flowers’s investigation, and issued an order requiring that the lounge be closed or its deficiencies corrected. In paragraph ten of his order, Thomell required that Curry employ a registered architect to correct the lounge’s deficiencies. Thornell based this requirement on sections 34-2-32(b) and -32(c). These sections read in part as follows:
“(b) No person shall be required to register as an architect in order to make plans and specifications for or administer the erection, enlargement or alteration of *639 any building upon any farm for the use of any farmer, irrespective of the cost of such building, or any single family residence building or any utility works, structures or building ... or of any other type building(s) whose total cost is less than $50,000.00 except schools, churches, auditoriums or other buildings intended for the mass assemblage of people.
“(c) The services of a registered architect shall be required on all buildings except those hereinabove exempted and no official of this state or of any city, town or county herein charged with the enforcement of laws, ordinances or regulations relating to the construction or alteration of buildings, shall accept or approve any plans or specifications that are not so prepared.”
Curry appealed Thornell’s order to the circuit court. The case was presented to the court on the pleadings and stipulated facts. Curry admitted, in his pleadings, to Flowers’s findings, but objected to paragraph ten of Thornell’s order, requiring that Curry employ a registered architect to correct the lounge’s defects. The circuit court affirmed that portion of Thomell’s order directing that Curry close the lounge until certain corrections were made, but reversed that portion of the order insofar as it required Curry to obtain the services of a registered architect to make such corrections. The court found that Thornell’s order requiring the services of an architect was unreasonable as a matter of law and under the circumstances of the case. Thor-nell and Flowers appealed that portion of the circuit court’s order to this court.
Thomell and Flowers argue that section 34-2-32(b) requires that an architect be employed for the alteration, enlargement, or erection of any building unless specifically exempted therein. Curry contends, however, that section 34-2-32(b), Code 1975, is (1) inapplicable to the work needed to be done on his business, (2) inapplicable to his business, and/or (3) unenforceable due to indefiniteness and vagueness.
Curry notes correctly with respect to his first contention that the services of a registered architect are required only where the erection, enlargement, or alteration of a building is involved. § 34-2-32(b), Code 1975. Thus, he contends that the services of a registered architect are not necessary to correct the lounge’s deficiencies because the work required to make the corrections does not constitute the erection, enlargement, or alteration of a building.
In order to determine whether Curry’s contention is correct, we must ascertain the meaning of the terms “the erection, enlargement or alteration of any building.” Words used in a statute must be given their natural, plain, ordinary and commonly understood meaning in the absence of a statutory definition. Rush v. Department of Revenue, 416 So.2d 1023 (Ala.Civ.App.1982).
“To erect” is commonly understood to mean to raise, as a building, to build or construct, as to erect a house. Burch v. Ragan, 92 Ga.App. 605, 89 S.E.2d 541 (1955). Erecting means “[rjaising up; building a completed building; to build; construct; set up. In a statute on the ‘erection’ of ... buildings, this terms does not include repairing, alteration, enlarging, or removal.” Black’s Law Dictionary 636 (rev. 4th ed. 1968). Every change in an existing building does not constitute an erection of a building; the change must be such that the whole structure as changed would be regarded as another new and different building. See generally, 30A C.J.S. Erection § 865 (1965). Enlargement means an increase in bulk or extent, augmentation, or expansion. Surowitz v. City of Pontiac, 374 Mich. 597, 132 N.W.2d 628 (1965). An alteration is a “[vjariation; changing; making different. A change of a thing from one form or state to another; making a thing different from what it was without destroying its identity.” Black’s Law Dictionary 103 (rev. 4th ed. 1968). An alteration as applied to buildings is “a change or substitution made in a particular part of the structure which is of such a *640 substantial nature as to make the structure itself, or an important part thereof, materially different from what it formerly was.” 3A C.J.S. Alterations § 263 (1973) (footnote omitted). Paye v. City of Grosse Pointe, 279 Mich. 254, 271 N.W. 826 (1937). Several cases have distinguished alterations from repairs, stating that to repair means to mend defective portions of a structure; any act of restoration to a former more perfect condition. Alteration means a change which produces a different structure or a structure so changed in some essential respects as to constitute a different structure in such particulars. Boston & A.R. Co. v. Department of Public Utilities, 314 Mass. 634, 51 N.E.2d 445 (1943).
As noted above, Flowers found that the lounge’s entire electrical system would have to be replaced by a licensed electrician. The only “structural” problems with the lounge were the boarding up of several doors and windows, seating for 94 instead of 73 people, and deterioration of the wood frame section. Flowers made no finding that the services of a registered architect were required to correct these particular problems. Apparently, in order for Curry to correct these deficiencies he must reopen some doors and windows, post the maximum seating capacity at 73 and provide seating only up to that number, and repair the wood frame section. None of the corrections that need to be made requires the erection, enlargement, or alteration of a building as those terms are defined above. Some of these corrections are in the nature of repairs (e.g., fixing the deteriorated wood frame). The work needed to be done on the lounge does not constitute an erection, enlargement, or alteration of a building. We therefore conclude that Thomell’s order requiring Curry to secure the services of a registered architect to correct the lounge’s deficiencies is unlawful under the facts of this case. Having so decided, we need not address other contentions raised on appeal concerning the construction and constitutionality of section 34-2-32.
The trial court s judgment is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.