WEBB NICHOLS & another[1] *vs*. BOARD OF ZONING APPEAL
OF CAMBRIDGE.

No. 87-1442.

Middlesex.   October 14, 1988. — December 6, 1988.

Present: DREBEN, KAPLAN, & KASS, JJ.

*Zoning,* Nonconforming use or structure, Special permit. *Cambridge.*

Under the provisions of the Cambridge zoning ordinance a special permit was
    required when alterations were made to a nonconforming building to
    accommodate a change from one permitted accessory use to another
    permitted use. [633-634]

Renovations to a certain garage in Cambridge, a preexisting nonconforming
    structure under the zoning ordinance, made to implement a change of
    use to an architect's home office, were "alterations" as matter of law
    within the meaning of that term as used in the zoning ordinance. [634]

CIVIL ACTION commenced in the Superior Court Department
on October 1, 1985.

The case was heard by *William Highgas, Jr.,* J., sitting
under statutory authority.

*Birge Albright* for the defendant.
*Edward Woll, Jr.,* for the plaintiffs.

DREBEN, J.   The questions raised by this appeal are: (1)
whether, under the Cambridge zoning ordinance, a special permit
is required when alterations are made to a nonconforming building
to accommodate a change from one permitted accessory use to
another permitted use; and (2) whether the renovations, made in
this case to implement the change from a garage to an architect's
home office, were as matter of law alterations within the meaning
of the ordinance. We are constrained by the terms of the ordinance
to answer "yes" to both questions.

We take the facts from the findings of the trial judge. Relying
on a building permit issued by the city's then zoning compliance

[1] Jane P. Nichols.

officer, the plaintiffs, Webb and Jane P. Nichols, renovated their garage so that Webb could use it as a home architect's office, a permitted accessory use in the district. The garage did not meet the sideline requirements of the ordinance but was a preexisting nonconforming structure. The improvements made by the Nicholses, listed in the margin,[2] did not change the "footprint" of the garage.

More than a year after the garage had been converted into a home office, another zoning inspector notified the plaintiffs that the renovations violated the zoning ordinance and required a special permit.[3] The plaintiffs appealed the inspector's ruling to the board of zoning appeal (board) and, after that body upheld the second zoning inspector's determination, to the Superior Court. After hearing, a judge sitting by designation ruled that a special permit was not required.

We turn to the governing statute and ordinance, the pertinent parts of which are set forth in the margin.[4] General Laws,

---

[2] The following work was performed: installation of utilities (water, gas, and electric); installation of lighting fixtures, electric outlets, a gas space heater, two telephones, a ceiling fan, and carpeting on the floor; installation and insulation of a new interior wall over the cement wall; dropping the ceiling; placing wooden panels over the garage doors; reshingling the roof; enlargement of one window to three times its original size; and installation of storm windows.

[3] The original notification stated that a variance was also needed. The board conceded in its reply brief in this court that a variance is not required.

[4] General Laws, c. 40A, § 6, as appearing in St. 1975, c. 808, § 3, provides in relevant part that zoning ordinances shall not apply "to structures or uses lawfully in existence . . . but shall apply to any change or substantial extension of such use, to a building or special permit issued after the first notice of . . . public hearing [on such ordinance], to any reconstruction, extension or structural change of such structure *and to any alteration of a structure* begun after the first notice of said public hearing *to provide for its use for a substantially different purpose* or for the same purpose in a substantially different manner . . ." (emphasis supplied).

Article 8.000 of the zoning ordinance is entitled Nonconformity. Section 8.11 reads as follows:

"This ordinance shall not apply to existing buildings or structures, nor to the existing use of any building or structure or of land, . . . but it shall apply to any change of use thereof and to any alteration of a building or structure when the same would amount to reconstruction, extension or structural change, *and to any alteration of a building* or structure *to provide*

c. 40A, § 6, "prescribes the minimum of tolerance that must be accorded to nonconforming uses, existing buildings and structures, and the existing use of any building or structure . . ." (citations omitted). *Inspector of Bldgs. of Burlington* v. *Murphy*, 320 Mass. 207, 209 (1946). Briefly stated, the ordinance provides that it applies to the three situations of nonconformity permitted by the statute; (1) a change of use; (2) an alteration of a nonconforming building amounting to a "reconstruction, extension or structural change"; and (3) "any alteration of a [nonconforming] building or structure to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration."

The plaintiffs would have us construe the ordinance as only requiring a special permit when there is an alteration to a building to accommodate a change from a nonconforming use to another nonconforming use. Neither the statute nor the ordinance is so limited. As indicated above, the ordinance applies in three nonconforming situations. The first is when there is any change in a nonconforming use. Section 8.21, set forth in the margin,[5] makes clear that a change to a permitted use may be effected without seeking a special permit. A fortiori, if no alterations are made, a change from a permitted use to another permitted use need not be presented to the board of zoning appeal. The change in use referred to in § 8.11 applies only when the use, although changed, is still nonconforming.

When, however, a nonconforming structure is altered to provide for a use different from the use prior to alteration

---

*for its use for a purpose or in a manner substantially different from the use to which it was put before alteration*, or for its use for the same purpose to a substantially greater extent" (emphasis supplied).

Section 8.22 provides for special permits and subparagraph (c) provides in relevant part: "In a Residence district the Board of Zoning Appeal may grant a special permit for the alteration or enlargement of a nonconforming structure (but not the alteration or enlargement of a nonconforming use) . . . ."

[5] "8.21 Any nonconforming structure or use which existed at the time of the first notice of public hearing by the Planning Board of the applicable provisions of this or any prior ordinance or any amendment thereto may be continued or changed to be conforming, but when so changed to be conforming it shall not be made nonconforming again."

(situation three), the ordinance applies even if the new use is a permitted one. Beginning with St. 1920, c. 601, § 7, with only minor changes in language, the zoning statute applies to "any alteration of a building to provide for its use for a purpose, or in a manner, substantially different from the use to which it was put before the alteration." See *Opinion of the Justices*, 234 Mass. 597, 603 (1920). If the plaintiffs' construction were accepted, the third portion (in our numbering) of the ordinance (and the zoning statute) would be wholly superfluous as changes from one nonconforming use to another are already covered by the first portion.

The judge, relying on *Boston & Albany R.R.* v. *Department of Pub. Util.*, 314 Mass. 634, 637-638 (1943), ruled that a permit was not required because the structure had not been "altered such as to amount to a reconstruction, extension or structural change." The ordinance, however, specifically differentiates between the magnitude of the alterations required by the second and third clauses. The renovations made here, see note 2, *supra*, although not perhaps of the magnitude of "reconstruction, extension or structural change," were alterations as matter of law and were not ordinary repairs. See *Boston & Albany R.R.* v. *Department of Pub. Util.*, 314 Mass. at 637-638; *D'Ambra* v. *Zoning Bd. of Appeal of Attleboro*, 324 Mass. 61, 62-63 (1949).

Although we hold that the ordinance requires a special permit from the board to sanction the alterations made by the plaintiffs, when the board considers the application for a special permit it will doubtless consider the following matters favoring its grant. The footprint of the building has not changed, and there has been no increase in its nonconformity. As the judge intimated, the appearance of the garage has improved.[6] Moreover, while the city is not estopped by the action of the first zoning inspector, the board, in considering whether to grant a permit

---

[6] In cases where the provisions of the relevant ordinance were less clear, courts have construed them to allow interior alterations for a permitted use without a special permit. See *Petruzzi* v. *Zoning Bd. of Appeals of Oxford*, 176 Conn. 479, 484 (1979); *Sukthankar's Radnor Township Zoning Appeals*, 2 Pa. Commw. 489, 494 (1971).

in these circumstances, may take into account the good faith reliance of the plaintiffs on the actions of the city's officials.

*Judgment reversed.*