HEATHER HOFFMAN *vs.* BOARD OF ZONING APPEAL OF
CAMBRIDGE & another[1] (and a consolidated case[2]).

No. 07-P-1853.

Suffolk. February 13, 2009. - August 10, 2009.

Present: KATZMANN, RUBIN, & FECTEAU, JJ.

*Zoning,* Appeal, Person aggrieved, Variance, Building permit, Lot. *Practice Civil,* Zoning appeal, Standing.

A property owner (plaintiff) had standing to challenge the decision of a local zoning board granting a variance legalizing two newly constructed dwelling units on neighboring property, based on credible evidence regarding the effect of the variance on on-street parking near the plaintiff's property. [807-810]

A decision of a local zoning board granting a variance legalizing two newly constructed dwelling units on neighboring property was insufficient as a matter of law, where it contained no findings with respect to whether relief could be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the applicable zoning ordinance. [810-811]

This court remanded to a local zoning board (board) a property owner's appeal from a building commissioner's determination rescinding certifications of occupancy for certain dwelling units, to allow the board to construe the applicable zoning ordinance and to reconsider the property owner's application for a variance, in light of a possible exception presented in the ordinance to the effect of the common-law merger doctrine on the property at issue. [811-814]

CIVIL ACTION commenced in the Superior Court Department on August 12, 2004.

CIVIL ACTION commenced in the Land Court Department on November 18, 2004.

After transfer of the Superior Court action to the Land Court and consolidation of the actions in the Land Court, the case was heard by *Gordon H. Piper,* J.

*J. Gavin Cockfield* for Heather Hoffman.

---

[1] Husam Azzam.

[2] Husam Azzam *vs.* City of Cambridge and Board of Zoning Appeal of Cambridge.

*Jason A. Manekas* for Husam Azzam.

*Vali Buland* for board of zoning appeal of Cambridge.

RUBIN, J. This case involves cross-appeals from a judgment of the Land Court in two consolidated cases concerning two parcels of land in the city of Cambridge (city). Husam M. Azzam, a defendant in one case and the plaintiff in the other, now owns both parcels. His predecessors in title, Maximiano Gouveia and Narciza Gouveia (the Gouveias), took title to the first parcel, 224-226 Hurley Street (the first parcel), by deed dated March 19, 1942. They took title to the second parcel, 220-222½ Hurley Street (the second parcel), by deed dated May 17, 1950. As of that latter date, the two parcels came into common ownership. The two parcels (collectively the locus) are located in the residence C-1 zoning district under the city zoning ordinance (ordinance).

## I.

When the Gouveias purchased the first parcel in 1942, it held a building with four dwelling units. These four dwelling units did not change in any significant way from 1942 through their sale to Azzam in 2000. The Gouveias purchased the second parcel as an investment to operate as a commercial parking lot. Pursuant to a commercial license, the Gouveias and, after their deaths, their heirs operated the second parcel as an open-air parking lot for twelve cars from 1950 to 2000, when they sold the second parcel to Azzam. A chain link fence separated the two parcels.

In July, 2000, Azzam entered into a purchase and sale agreement with the heirs of Narciza Gouveia to purchase the locus.[3] This agreement was "[s]ubject to [Azzam] obtaining building permit for 2 units" on the parcel that was then in use as a commercial parking lot. By September 27, 2000, except for final review of his plans, Azzam had received all of the necessary approvals for his building permit applications. On that date, Azzam took title to the locus as trustee of the 220-226 Hurley Street Realty Trust in a single deed that describes the locus as two parcels. The first parcel is initially described as "a certain

---

[3]There was testimony from the Gouveias' daughter that Maximiano predeceased his wife, Narciza. Because they held title as tenants by the entirety, upon his death, the property vested solely in Narciza.

parcel of land with the buildings thereon" and is further described using metes and bounds, and the second parcel is described as "the land numbered 220-222$\frac{1}{2}$ Hurley Street." On October 13, 2000, the city issued building permits for the construction of two single-family dwelling units on the second parcel. After construction was complete, the commissioner issued certificates of occupancy for those dwelling units.

In July, 2003, the building commissioner (commissioner) rescinded the certificates of occupancy based on his determination that the two parcels had merged into a single lot for zoning purposes. If the locus was a single lot when the city issued the building permits, the two additional dwelling units would be in violation of the ordinance's minimum lot area per dwelling unit requirement. Azzam appealed the commissioner's determination to the board of zoning appeal (board), which upheld the commissioner. Azzam then appealed to the Superior Court (the enforcement appeal).[4]

Azzam subsequently applied to the board for a variance to legalize the two newly constructed dwelling units. The board granted the variance on November 5, 2004. The board's decision reports the arguments that Azzam's lawyer made in support of the variance, namely "that the lot is unusually shaped in its narrowness making it difficult to achieve an adequate and reasonable use of the property without building the structures as Mr. Azzam has done." The lawyer "also cited the merger doctrine as the

---

[4]We are not unmindful of the burden that may have been placed on Azzam by the city issuing building permits allowing construction, then rescinding certificates of occupancy on the basis of a legal conclusion the city could have reached at the time it evaluated the building permit applications. Those applications were made in the name of one of the heirs of Narciza Gouveia and were prepared by Azzam. The city contends that the applicants represented that the second parcel was a separately owned buildable lot. Azzam contends that the applicants disclosed the common ownership of the two lots to the city before seeking the building permits. We express no opinion about these factual contentions, or their potential legal significance. We note that this action involves only appeals from the board's affirmance of the commissioner's determination that the two additional dwelling units would violate the ordinance's minimum lot area per dwelling requirement and from its issuance of a variance for the two dwelling units. No questions are presented in this appeal concerning "the good faith reliance of" Azzam "on the actions of the city's officials." *Nichols* v. *Board of Zoning Appeal of Cambridge*, 26 Mass. App. Ct. 631, 634-635 (1988).

cause of, and the hardship related to the current dilemma. Specifically, he stated that Azzam went ahead with the project without being aware that the merger doctrine would be applied." The board also noted the following hardships:

"1. that the lot is unusually shaped;

"2. that it contains a structure built before the advent of zoning, which is grossly nonconforming to current standards and creates an unusual position for the building of a building on the lot, and that this property is encumbered by this structure; and

"3. that there is a condition of wetness in the soil of the site, which means that development beneath the buildings would be impractical."

The board concluded, "The Board specifically finds that there are circumstances involving a substantial hardship relating to this property within the meaning of []G. L. c. 40A, § 10. The Board also finds that desirable relief could be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the Ordinance." Appellant Heather Hoffman, who, with her husband, Mark Jaquith, owns and resides at property located across the street from the locus, appealed to the Land Court the decision granting the variance (the variance appeal).

The enforcement appeal was transferred to the Land Court and consolidated with the variance appeal for trial. Hoffman sought to intervene in the enforcement appeal, but her motion was denied. After trial, the Land Court entered a single judgment in the consolidated cases. In the variance appeal, the judge concluded that Hoffman lacked standing. In the enforcement appeal, the judge affirmed the board's conclusion, holding that the two parcels merged when they came into common ownership in 1950 and that they should be treated as a single lot for zoning purposes. Both Hoffman and Azzam have appealed.

## II.

### A.

We address first the variance appeal, turning initially to the

question of Hoffman's standing. Hoffman is a "party in interest" with presumptive standing to challenge the decision of the board. See G. L. c. 40A, § 11 (defining "parties in interest" as "the petitioner, abutters, owners of land directly opposite on any public or private street or way, and abutters to the abutters within three hundred feet of the property line of the petitioner"). This presumptive standing recedes when the party challenging standing offers evidence supporting his or her challenge. *Barvenik* v. *Board of Alderman of Newton,* 33 Mass. App. Ct. 129, 131 (1992). Hoffman concedes that an adequate showing was made to rebut her presumptive standing and that the burden, therefore, shifted to her to demonstrate that she was a person aggrieved. See *id.* at 131-132.

Hoffman cites numerous injuries resulting from the two additional dwelling units that render her a person aggrieved. We conclude that the effect on on-street parking near Hoffman's property is dispositive.

Hoffman and her husband have two vehicles, each of which has a city resident parking sticker. She also has a visitor's parking pass that allows her guests to park in her neighborhood. She and her husband park one of their cars in their driveway and another on the street.

Hoffman presented the testimony of a licensed professional traffic engineer who had performed a traffic analysis to determine whether occupancy of the two additional dwelling units would affect parking near Hoffman's property. Azzam also presented the testimony of his own licensed professional traffic engineer. Hoffman's traffic engineer testified that during certain peak hours, either no permit parking spaces were available or only one permit parking space was available on Hoffman's block of Hurley Street. (He also testified that at other times, up to two permit parking spaces were available.) He concluded that "the one or two spaces that are available" on Hoffman's block "will become occupied" if the additional dwelling units become occupied. Azzam's traffic engineer testified that there were many available parking spaces within a two-block radius of Hoffman's property. The judge found that Hoffman and her husband currently experience difficulty finding on-street parking on their block and that the two additional dwelling units would likely increase the on-street parking demand by one or two vehicles.

"When the factual inquiry focuses on standing . . . a plaintiff is not required to prove by a preponderance of the evidence that his or her claims of particularized or special injury are true. 'Rather, the plaintiff must put forth credible evidence to substantiate his allegations. It is in this context that standing is essentially a question of fact for the trial judge.' " *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 441 (2005) (brackets omitted), quoting from *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). The idea of putting forth "credible evidence" of a particularized injury is equivalent to establishing a "plausible claim" of that injury: "[t]he two phrases are simply different ways of expressing the same concept. A plaintiff makes a 'plausible claim' of particularized injury by producing 'credible evidence' of that injury." *Id.* at 441 n.13. The threshold question whether Hoffman has standing is different than the ultimate merit of Hoffman's allegations. See *Marashlian*, 421 Mass. at 721. Thus, the relevant question was whether Hoffman put forth credible evidence of a particularized injury to support her claimed status as a person aggrieved.

In *Marashlian*, 421 Mass. at 723, the Supreme Judicial Court held that even a diminution in on-street parking that would leave adequate parking available was sufficient to confer standing. Under *Marashlian*, Hoffman produced credible evidence of injury sufficient to confer standing. That she and her husband will still be able if the variance is granted to park elsewhere, within several blocks of their property, does not mean that they have failed to produce credible evidence of a particularized injury. Nor is it relevant that Hoffman lacks the exclusive right to park on her block. In the absence of the two additional dwelling units, she is, in fact, sometimes able to park on her block. Hoffman put forth credible evidence that if the two additional dwelling units become occupied, her ability to do so will be diminished or perhaps even extinguished.[5] This is sufficient to demonstrate that she has standing. See *Marashlian*, 421 Mass. at 723 (loss of "some public

---

[5]The judge below found that Hoffman and her husband park one of their vehicles off-street in their driveway, along with a fifteen-foot boat stored on a trailer. Both the city and Azzam argue for the first time on appeal that Hoffman can allege no sufficient injury because her residence in fact has two off-street parking spaces on one of which she stores the boat in a manner they now claim is unlawful; they argue that it is Hoffman's own unlawful conduct

parking spaces" sufficient to confer standing even in the face of a finding by the judge that "the reduced number of spaces . . . [would] be adequate. . . . Such a finding goes to the plaintiffs' success on the merits and not to their ability to challenge acts of the board").

### B.

Having concluded that Hoffman has standing, we turn to the merits of the variance appeal. Although the judge did not reach those merits, we need not remand for the Land Court to consider this question in the first instance because the decision granting the variance is insufficient as a matter of law. See *Choate* v. *Zoning Bd. of Appeals of Mashpee*, 67 Mass. App. Ct. 376, 387 (2006). A decision granting a variance may be upheld only if the statutory prerequisites set out in G. L. c. 40A, § 10, have been met.[6] The board's decision contains no findings with respect to whether relief could be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the ordinance. It is well settled that a mere recital of the statutory prerequisites or assertion that each of those prerequisites has been met is inadequate to support a variance. *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 10 (1981). Consequently, the decision granting the variance must be reversed.[7] The board's failure below to make the requisite findings does not necessarily mean that the evidence

---

that would cause her any injury should the two additional dwelling units be occupied. Since neither the city nor Azzam presented this argument to the Land Court, we do not address it.

[6]Under the standard, a variance may be granted where:

> "[O]wing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law."

G. L. c. 40A, § 10.

[7]Given our conclusion concerning the failure of the board to make the required findings, we need not decide whether the board's decision rests on

put forward by Azzam could not support such findings, a question on which we express no opinion. As will be described in greater detail *infra*, on remand the board may address that question in the first instance.

## III.

Although the variance is insufficient to allow the two additional dwelling units, those dwelling units are lawful under the ordinance if the locus consists of two separate lots for zoning purposes. If, however, the locus consists of a single lot for zoning purposes, the two additional dwelling units are, as the judge below found, unlawful under the ordinance.

Under the common-law merger doctrine, when adjacent nonconforming lots come into common ownership, they are normally merged and treated as a single lot for zoning purposes. See *Seltzer* v. *Board of Appeals of Orleans*, 24 Mass. App. Ct. 521, 522 (1987). However, the judge below stated that adjacent nonconforming lots that retain their separate identities do not merge, and Azzam asserts the same argument in his brief.

The cases on which the judge and Azzam rely do not describe such an exception to the common-law merger doctrine. The phrase "separate identity" traces back to *Lindsay* v. *Board of Appeals of Milton*, 362 Mass. 126, 131-132 (1972). There, the Supreme Judicial Court held that an owner could not revive two previously existing lots where those lots had merged under the relevant zoning by-law. In *Lindsay*, the owner argued that a grandfather exception allowed him to build on one of two adjacent undersized lots. The Supreme Judicial Court construed the grandfather exception

adequate "circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located." G. L. c. 40A, § 10. The board found that the lot is unusually shaped because it is narrow. Cf. *Shafer* v. *Zoning Bd. of Appeals of Scituate*, 24 Mass. App. Ct. 966, 967 (1987) (the "shape" of a lot is not to be confused with its "size"). It also concluded that there was wetness in the soil, but this appears to have had nothing to do with the decision to grant the variance, seeming, rather, to be tied to certain conditions imposed when the variance was granted. Finally, it concluded that the grossly nonconforming structure on the lot "creates an unusual position for the building of a building on the lot," although it did not explain the relevance of this to the requirement at issue of the minimum lot area per dwelling unit.

as applying only to undersized lots that had retained their separate identities. That is, the grandfather exception applied only to those lots that had not merged. Because the owner's adjacent undersized lots had merged and thus lost their separate identities, the grandfather exception did not apply. *Ibid.* We made the same point in *Asack* v. *Board of Appeals of Westwood*, 47 Mass. App. Ct. 733, 736 (1999). We reiterated that "[a] person owning adjoining record lots may not artificially divide them so as to restore old record boundaries to obtain a grandfather nonconforming exemption; to preserve the exception the lots must retain 'a separate identity.' " *Ibid.*, quoting from *Lindsay*, 362 Mass. at 132.

These cases do not imply that adjacent nonconforming lots that in some sense retain their separate identities are exempt from the common-law merger doctrine. Instead, they mean that an owner of merged lots may not artificially divide them. Although we have previously suggested that lots that retain their separate identities may not be subject to the common-law merger doctrine, see *Carabetta* v. *Board of Appeals of Truro*, 73 Mass. App. Ct. 266, 270-271 & n.9 (2008) (suggesting this possibility but ultimately reserving the question), we have been provided in this case with no authority that would support such a rule.

Nonetheless, it is within the legislative power of the city to override the effects of the common-law merger doctrine and allow adjacent nonconforming lots that come into common ownership to be treated as separate lots for zoning purposes. Azzam's primary argument in the enforcement appeal is that the ordinance accomplishes precisely this.

Article 2.000 of the ordinance defines a "[l]ot" as "[a] parcel of land in identical ownership throughout, bounded by other lots or by streets, *which is designated by its owner to be used, developed or built upon as a unit*" (emphasis added). Azzam argues that when the city issued his building permits, the two parcels had never been designated by their owner to be used, developed, or built upon as a unit. Consequently, he argues, they should not be treated as a single lot for zoning purposes.[8]

Azzam argued before the board that when he purchased the

---

[8]The record contains two previous versions of the ordinance, one dated December 27, 1943, and one as amended through May 28, 1962. The definition quoted in the text, which is contained in the current version of the

locus, the first parcel was residential, the second parcel was a commercial parking lot, and a chain link fence separated the two parcels; the Gouveias had used the two parcels in that way ever since the parcels came into common ownership.[9] Azzam argued further that he did not designate the two parcels to be used, developed, or built upon as a unit at any time prior to obtaining his building permits.

The board implicitly rejected this argument in upholding the commissioner's determination that the two parcels had merged into a single lot for zoning purposes. However, the board did so without any discussion of the meaning of the clause upon which Azzam relies. Although the board is entitled to some deference in its construction of its own ordinance, this failure on the part of the board to explain its interpretation of article 2.000 renders appellate review exceedingly difficult. Cf. *Conroy* v. *Conservation Commn. of Lexington*, 73 Mass. App. Ct. 552, 563 n.15 (2009). At argument, the city indicated that the clause upon which Azzam relies does have operative effect. It represented that it allows institutional property owners to designate certain portions of contiguous property held in common ownership as separate lots for zoning purposes, and by way of example, it represented that a university may designate a portion of contiguous property held in its ownership as a lot upon which it intends to build a dormitory.

However, the city did not explain, and nothing in the record explains, what procedure one must undertake in order to designate a "parcel of land in identical ownership throughout" as a separate lot for zoning purposes. Azzam does not argue that he designated the two parcels as separate lots, but that, despite their coming into common ownership, they were never designated by their

ordinance, was present in the 1962 version as well. In the 1943 version, however, lot was defined as "[a] parcel of land in identical ownership throughout which is to be occupied by a building and its accessory buildings, together with such open yard areas as are required under the provisions of this ordinance." No party has argued that the version quoted in the text is not applicable in this case, or that it was not part of the ordinance at any relevant time.

[9] The city places a great deal of weight on the fact that two of the people living on the first parcel parked their cars in the open-air parking lot on the second parcel. The use, by a resident of one parcel of land, of two parking spaces in a parking lot on an adjacent parcel does not indicate that the two parcels are a single lot. This is so even if that resident owns both parcels.

"owner to be used, developed or built upon as a unit" prior to his obtaining the building permits.[10]

The ordinance, of course, must be applied uniformly to both institutional and noninstitutional property owners. On this record, we are unable to ascertain how the board construes the clause upon which Azzam relies. Before us, the city argues only that the two parcels merged when they came into common ownership in 1950. It does not explain precisely what the disputed clause means, nor does it explain what procedure is required for a "designation" to be effective.

Because we owe deference to the board's reasonable construction of its own ordinance, see *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. 921, 923 (1997), we conclude that the best course is to vacate the judgment of the Land Court in the enforcement appeal and remand to the board to allow it to construe its ordinance in the first instance. As described *supra*, the board may also reconsider on remand Azzam's application for a variance. The board will be required to address both issues unless a conclusion that art. 2.000 of the ordinance does permit the dwelling units, or findings adequate to support issuance of the variance, renders that unnecessary (although even in such an instance, the board may, in its discretion, address the other issue).

The judgment of the Land Court with respect to the variance appeal is reversed, the judgment of the Land Court with respect to the enforcement appeal is vacated, and the case is remanded to the Land Court with instructions that it remand to the board for further proceedings consistent with this opinion.

*So ordered.*

---

[10]At argument, the city asserted that it allows property owners to designate certain lots held in common ownership as separate lots only if the lots are conforming. Since Azzam relies on the ordinance not to revive or create two lots out of what would otherwise be a single lot for zoning purposes, but to demonstrate that the two parcels he now owns were never merged into a single lot, the assertion of the city, even if true, would appear to have no bearing on the instant case.