NICOLAS TIMPERIO, trustee,[1] vs. ZONING BOARD OF APPEALS
OF WESTON & another.[2]

No. 12-P-1158.

Suffolk. April 8, 2013. - August 16, 2013.

Present: KANTROWITZ, GRAHAM, & WOLOHOJIAN, JJ.

*Zoning*, Variance, By-law, Lot, Lot size, Frontage.

Principles of res judicata did not require a local zoning board of appeals
    (board), in the circumstances of a 2011 application for a variance and
    special permit, to continue to apply its erroneous interpretation of the
    merger doctrine in a 1997 decision regarding the same lot, and therefore,
    the board properly concluded that the lot had not retained its "separate"
    status after subsequent amendments to the local zoning by-law [155-157];
    further, G. L. c. 40A, § 6, fourth par., did not preclude the board in perpetuity
    from finding that the lot had merged with adjoining lots held in common
    ownership at the time of the amendments [157-158].

CIVIL ACTION commenced in the Land Court Department on
September 1, 2011.

The case was heard by *Gordon H. Piper*, J., on motions for
summary judgment.

*Nicholas P. Shapiro* (*Jeffrey T. Angley* with him) for the
plaintiff.

*Katherine D. Laughman* for the defendants.

GRAHAM, J. The plaintiff, Nicholas Timperio, trustee of the
Newton Street II Trust, appeals from a decision of a judge of
the Land Court granting summary judgment to the defendants
and affirming the decision of the zoning board of appeals of
Weston (board) denying Timperio's application for a variance
and special permit for a parcel comprised of lots 8 and 9 as
shown on a plan dated April 8, 1925, and recorded on April 21,

[1]Of the Newton Street II Trust.
[2]Town of Weston (town).

1925 (the 1925 plan).[3] Albeit for reasons different from those stated by the judge, we affirm.

*Background.* On December 1, 1994, by a single deed, Nicolas and Robin Timperio took title to lots 7, 8, and 9, each fronting on Newton Street in Weston, as shown on the 1925 plan. Lot 7 contains approximately 23,550 square feet with 106 feet of frontage; lot 8 contains approximately 18,410 square feet with 106.2 feet of frontage; and lot 9 contains 6,467 square feet with 73.4 feet of frontage. Lots 8 and 9 together contain 24,877 square feet and 179.6 feet of frontage. When considered as a single parcel, the three lots together contain 48,427 square feet and 285.6 feet of frontage.

Shortly after the lots were created in 1925, lot 7 was sold separately from lots 8 and 9. Lots 8 and 9 have never been in separate ownership from one another, and the plaintiff concedes they have merged for purposes of zoning. Lot 7 remained in separate ownership from lots 8 and 9 until 1984 when Richard and Jane Cutter, who had taken title to lot 7 in 1967, took title to lots 8 and 9 as well. The three lots thereafter remained in common ownership and were conveyed to the Timperios by a single deed in 1994.[4]

Weston first adopted its zoning by-law (by-law) in 1928, requiring a minimum lot size of 10,000 square feet in the district where lots 7, 8, and 9 are located. Subsequent amendments to the by-law increased the square footage, frontage, and setback requirements. By 1954, the minimum area requirement was 60,000 square feet, and the minimum frontage required was 200 feet. These were the requirements in effect in April of 1997, in the zoning district in which lots 7, 8, and 9 are located. In May

---

[3] The 1925 plan and all deeds relevant to the issue before us are recorded in the Middlesex County registry of deeds.

[4] There is some suggestion in the record that the Timperios again separated ownership of lots 8 and 9 from lot 7 in April of 1998. The complaint alleges that by deed dated April 20, 1998, the Timperios conveyed lots 8 and 9 to Nicolas Timperio, trustee of the Newton Street II Trust, and on the same day conveyed lot 7 to a separate trust with Nicolas Timperio as trustee. The complaint further contends that on October 16, 2002, Nicolas Timperio, as trustee, conveyed lot 7 back to the Timperios as tenants by the entirety. In the affidavits in support of summary judgment, these transactions are not confirmed; Nicolas Timperio avers only that he is the sole trustee of the trust that owns "the real property that is the subject of the present lawsuit."

of 1997, the town increased the minimum street frontage require-
ment to 250 feet and also increased by 50 feet the requirement
for lot width at the street setback line. The 1997 amendments
were in place when the plaintiff's 2011 application for a vari-
ance and special permit, at issue in this case, was filed.

The Timperios' single-family home, originally constructed in
1929, is located on lot 7. Lots 8 and 9 are unimproved. In 1996,
the board granted the Timperios a variance from certain setback
requirements for an addition to their home, specifying that the
variance was for lots 7, 8, and 9 as a single parcel containing
48,427 square feet. The Timperios also sought and received a
finding pursuant to G. L. c. 40A, § 6, first par., applicable to
approval of additions to preexisting nonconforming structures,
that "the proposed addition to the preexisting nonconforming
structure will not be substantially more detrimental to the neighbor-
hood than the preexisting nonconforming structure and preexist-
ing nonconforming lot." In the 1996 variance decision, the board
expressed its view that, contrary to the Timperios' contention, a
request for a variance for lot 7, alone, was not properly before
the board.

The Timperios, however, desired a variance for lot 7, in-
dividually. Rather than appeal, they decided not to record the
1996 variance or seek a building permit pursuant to it, allowed
it to lapse, and in 1997, reapplied for a variance and § 6 find-
ing applicable to lot 7 only. During the 1997 proceedings, the
Timperios made a request for a specific finding that lot 7
"retained its separate status" from lots 8 and 9. In an April 28,
1997, decision granting the variance, the board wrote that lot 7
"was separately owned in 1954 when the zoning was changed
making it preexisting nonconforming. According to the opinion
of Ms. Cutler (as Town Counsel advising the Board of Health),
Lot 7 retain[s] its 'grandfathered' status as a single, protected
lot for zoning purposes, even though the additional adjoining
land (Lots 8 and 9) has since been acquired." The variance
decision further notes that "Lots 8 and 9 are small and partially
wet. Their value might be in a conveyance to the abutters . . .
to the rear, to create frontage, presently lacking." Finally, the
board specifically found that "Lot 7 retains its separate status
as a preexisting nonconforming lot . . . ." Neither the town,

nor abutters, who had supported the variance for the addition, appealed from that decision.

Some fourteen years later, in 2011, Nicolas Timperio, trustee, desiring to construct a new home on lots 8 and 9, sought a variance from the by-law's sideline and centerline setback requirements, as well as a special permit and finding pursuant to G. L. c. 40A, § 6, first par., that "the proposed structure . . . will not be detrimental to the neighborhood," and a finding that "the lot" (presumably lots 8 and 9) "retains its status as a preexisting nonconforming lot." The board denied the application on the grounds that (i) lots 8 and 9 had merged with lot 7 for zoning purposes by virtue of the May, 1997, by-law amendments, and (ii) even if considered separately from lot 7, the parcel comprised of lots 8 and 9 did not meet the requirements for a variance, and "the proposed construction would be substantially detrimental to the public good and the neighborhood, and a substantial derogation from the intent and purpose of the Zoning By-law, as amended." Although the board's 2011 decision explicitly recognized its April, 1997, variance decision, the board noted that following the 1997 decision, in May of 1997, the town had further increased the required minimum street frontage and the requirement for lot width at the street setback line by 50 feet "in order to address construction elements threatening Weston's rural character." The board concluded that, regardless of the April, 1997, board decision, lots 7, 8, and 9 had all merged by operation of law in May, 1997, because at the time the 1997 amendment was enacted, the three lots were held in common ownership, and even when considered in the aggregate, the parcel consisting of lots 7, 8, and 9 did not meet all of the 1997 minimum zoning requirements. The board further noted that, although still nonconforming, the merged parcel was less nonconforming than the lots considered separately.

Although Timperio's motion for summary judgment is not contained in the record appendix, so far as we can discern, on appeal to the Land Court, Timperio argued that the board's finding in the 1997 variance decision, that lot 7 retained its separate status, constituted a determination that lot 7 had not merged with lots 8 and 9, and, pursuant to principles of res judicata, the finding was binding on the board in deciding the plaintiff's 2011

application. The Land Court judge granted summary judgment to the defendants, concluding that at least in the circumstances of this case, the unappealed 1997 decision of the board was not entitled to res judicata due to the absence of formalities in proceedings before such boards and because the issue before the board in 1997 was whether lot 7 qualified for a variance, not whether lots 8 and 9 were buildable separately from lot 7. The plaintiff appeals.[5]

*Discussion.* 1. *Common-law merger.* It is well settled that "[u]nder the common-law merger doctrine, when adjacent nonconforming lots come into common ownership, they are normally merged and treated as a single lot for zoning purposes." *Hoffman* v. *Board of Zoning Appeal of Cambridge*, 74 Mass. App. Ct. 804, 811 (2009). Although the reasons for its April, 1997, finding are unclear, the board did not apply the merger doctrine to the Timperios' 1997 variance application and specifically found that lot 7 "retains its separate status as a preexisting nonconforming lot." Timperio urges that this finding required the board to continue to refrain from applying the merger doctrine in considering his 2011 application. We disagree.

We start by reviewing the April 28, 1997, variance decision. Because "[v]ariances are not allowed as a matter of right and should be 'sparingly granted,' " *Lussier* v. *Zoning Bd. of Appeals of Peabody*, 447 Mass. 531, 534 (2006) (citations omitted), "the language of a variance 'is to be construed against the individual requesting the variance, rather than against the granting authority.' " *Ibid.*, quoting from *DiGiovanni* v. *Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 347 (1985). In its 1997 decision, the board simply found that "Lot 7 retains its separate status as a preexisting nonconforming lot." The 1997 decision noted "Town Counsel['s opinion] advising the Board of Health . . . [that] Lot 7 retained its 'grandfathered' status as a single, protected lot for zoning purposes, even though [it had come into common ownership with the adjoining lots 8 and 9]." It is not clear, from either the board's 1997 decision or town counsel's separate opinion letter, whether town counsel

---

[5]The plaintiff also seeks a declaration, pursuant to count II of the complaint, that lots 8 and 9 are protected by the provisions of G. L. c. 40A, § 6, fourth par., first sentence. See part 2, *infra*.

reached her opinion by analyzing the by-law, the common-law doctrine of merger, or the protections provided in G. L. c. 40A, § 6, fourth par., first sentence.[6] Nor is the basis for the board's ultimate finding apparent, other than reliance on the opinion town counsel had provided to the board of health. The parties seem to agree that the board's 1997 finding equates to a finding that lot 7 had not "merged" with lots 8 and 9. We assume without deciding that the parties are correct, and that, at least as of April 28, 1997, lot 7 had not merged with lots 8 and 9.

The plaintiff ignores the fact, however, that in its 2011 decision, the board did not purport to alter its 1997 finding. Rather, in determining that the three lots merged in May of 1997, the board focused on amendments to the zoning by-law that occurred after the date of the 1997 variance decision. In May of 1997, after the April, 1997, variance had issued, the town further increased to 250 feet the frontage requirements in the zoning district in which lots 7, 8, and 9 are located. Neither lot 7, standing alone, nor lots 8 and 9 combined, meet the 250 foot frontage requirement.[7] When the increased frontage requirements were adopted, the Timperios undeniably owned all three lots. Thus, the board properly considered them merged in order to reduce zoning nonconformities. See *Seltzer* v. *Board of Appeals of Orleans*, 24 Mass. App. Ct. 521, 522 (1987), and cases cited. We discern nothing in the 1997 variance decision that purports to perpetually exempt lot 7 from the merger doctrine in the face of subsequent by-law amendments. Nor does the plaintiff point to any language in the by-law that would exempt lots 7, 8, and 9 from being considered one lot in order to meet the requirements of the May, 1997, zoning amendment. See *Hoffman* v. *Board of Zoning Appeal of Cambridge*, 74 Mass. App. Ct. at 812 ("it is within the legislative power of the city to override the effects of the common-law merger doctrine and allow adjacent

---

[6]In *Preston* v. *Board of Appeals of Hull*, 51 Mass. App. Ct. 236, 243-244 (2001), issued after the board's 1997 decision in this case, we clarified that a lot that was separately owned when it became nonconforming, but which subsequently comes into common ownership with adjacent land, merges with the subsequently acquired land at least to the extent necessary to conform to the zoning requirements.

[7]As we have noted, lot 7 has 106 feet of frontage. Lots 8 and 9 have a combined frontage of 179.6 feet.

nonconforming lots that come into common ownership to be treated as separate lots for zoning purposes").

Regardless of whether principles of res judicata would prevent the board from finding that the lots had merged before April 28, 1997, we are aware of no authority that would require the board to continue to apply its erroneous interpretation of the merger doctrine to conclude that lot 7 retained its "separate" status even after the May, 1997, amendments to the by-law. Indeed, "[t]he right of the public to have the zoning by-law properly enforced cannot be forfeited by the action of [a municipality's] officers." *Building Commr. of Franklin* v. *Dispatch Communications of New England, Inc.*, 48 Mass. App. Ct. 709, 715-716 (2000), quoting from *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 162 (1977). We see no reason why this rationale would not apply to application of the merger doctrine.

2. *Statutory protection from merger.* Timperio also argues that G. L. c. 40A, § 6, fourth par., first sentence (reproduced in the margin),[8] precludes the board "in perpetuity" from finding that lots 8 and 9 merged with lot 7. We disagree. It is true that in *Rourke* v. *Rothman*, 448 Mass. 190, 194 (2007), the Supreme Judicial Court stated that "the plain language of the first sentence of G. L. c. 40A, § 6, fourth par., grants a perpetual exemption from increased local zoning requirements to certain lots that were once buildable under local bylaws." That "perpetual" protection applies, however, only if the statutory criteria are met. "The purpose of the statutory grandfather provision is, to be sure, to 'protect[] a once valid lot from being rendered unbuildable for residential purposes,' *Sturges* v. *Chilmark*, 380 Mass. 246, 261 (1980), but only if there is compliance with statutory conditions. The condition that the nonconforming lot 'not [be] held in common ownership with any adjoining land'

---

[8]The first sentence of G. L. c. 40A, § 6, fourth par., inserted by St. 1975, c. 808, § 3, provides:

> "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner *was not held in common ownership with any adjoining land*, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage" (emphasis supplied).

represents a statutory codification of a principle of long-standing application in the zoning context: a landowner will not be permitted to create a dimensional nonconformity if he could have used his adjoining land to avoid or diminish the nonconformity." *Planning Bd. of Norwell* v. *Serena*, 27 Mass. App. Ct. 689, 690 (1989), *S.C.*, 406 Mass. 1008 (1990).

In considering the application of the common ownership requirement of G. L. c. 40A, § 6, fourth par., to the 2011 variance application, it is the most recent instrument of record prior to the effective date of the zoning change that controls. *Adamowicz* v. *Ipswich*, 395 Mass. 757, 762 (1985). The most recent instrument of record prior to the 1997 zoning change is the 1994 deed conveying all three lots to the Timperios. Since all three lots were in joint ownership at the time the by-law was amended in May of 1997, the protections of § 6, fourth par., first sentence, do not apply to lots 8 and 9, separate from lot 7; or to lot 7, separate from lots 8 and 9. Whatever the import of the board's 1997 finding that lot 7 retained its "separate status as a preexisting nonconforming lot," it does not equate to a finding that lot 7 was separately *owned* from lots 8 and 9, thereby somehow qualifying lot 7 for "perpetual" protection under § 6.

*Conclusion.* Simply stated, even assuming that the board made a binding finding in April of 1997 that lot 7 had not merged with lots 8 and 9 at that time, that finding did not protect lot 7 from merging with lots 8 and 9 at a later time, when the by-law was again amended, and the lots were held in common ownership. As the plaintiff has not demonstrated that the May, 1997, zoning amendment does not apply to lots 7, 8, and 9, we discern no reason to disturb the judge's decision affirming the board's denial of the plaintiff's 2011 application for a variance and special permit.

So much of the judgment as dismisses count II of the complaint is vacated, and the judgment shall be modified to declare that lots 8 and 9 are not protected by the provisions of G. L. c. 40A, § 6, fourth par., first sentence. As so modified, the judgment is affirmed.

*So ordered.*